POE, COLLECTOR OF INTERNAL REVENUE, *v.* SEABORN.

No. 15.   Argued October 21, 1930.—Decided November 24, 1930.

*Solicitor General Thacher*, with whom *Assistant Attorney General Youngquist, Mr. Sewall Key* and *Miss Helen R. Carloss*, Special Assistants to the Attorney General, *Messrs. Clarence M. Charest*, General Counsel, and *T. H. Lewis, Jr.*, Special Attorney, Bureau of Internal Revenue, were on the brief, for Poe, Collector of Internal Revenue.

104

*Mr. George Donworth,* with whom *Messrs. Elmer E. Todd, Frank E. Holman,* and *Charles T. Donworth* were on the brief, for Seaborn.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Seaborn and his wife, citizens and residents of the State of Washington, made for the year 1927 separate income tax returns as permitted by the Revenue Act of 1926 c. 27, § 223 (U. S. C. App., Title 26, § 964).

During and prior to 1927 they accumulated property comprising real estate, stocks, bonds and other personal

property. While the real estate stood in his name alone, it is undisputed that all of the property real and personal constituted community property and that neither owned any separate property or had any separate income.

The income comprised Seaborn's salary, interest on bank deposits and on bonds, dividends, and profits on sales of real and personal property. He and his wife each returned one-half the total community income as gross income and each deducted one-half of the community expenses to arrive at the net income returned.

The Commissioner of Internal Revenue determined that all of the income should have been reported in the husband's return, and made an additional assessment against him. Seaborn paid under protest, claimed a refund, and on its rejection, brought this suit.

The District Court rendered judgment for the plaintiff (32 Fed. (2d) 916); the Collector appealed, and the Circuit Court of Appeals certified to us the question whether the husband was bound to report for income tax the entire income, or whether the spouses were entitled each to return one-half thereof. This Court ordered the whole record to be sent up.

The case requires us to construe Sections 210 (a) and 211 (a) of the Revenue Act of 1926 (U. S. C. App., Tit. 26, §§ 951 and 952), and apply them, as construed, to the interests of husband and wife in community property under the law of Washington. These sections lay a tax upon the net income of every individual.[1] The Act goes no farther, and furnishes no other standard or definition of what constitutes an individual's income. The use of the word " of " denotes ownership. It would be a strained construction, which, in the absence of further definition by Congress, should impute a broader significance to the phrase.

---

[1] The language has been the same in each act since that of February 24, 1919, 40 Stat. 1057.

The Commissioner concedes that the answer to the question involved in the cause must be found in the provisions of the law of the State, as to a wife's ownership of or interest in community property. What, then, is the law of Washington as to the ownership of community property and of community income, including the earnings of the husband's and wife's labor?

The answer is found in the statutes of the State,[2] and the decisions interpreting them.

These statutes provide that, save for property acquired by gift, bequest, devise or inheritance, all property however acquired after marriage, by either husband or wife, or by both, is community property. On the death of either spouse his or her interest is subject to testamentary disposition, and failing that, it passes to the issue of the decedent and not to the surviving spouse. While the husband has the management and control of community personal property and like power of disposition thereof as of his separate personal property, this power is subject to restrictions which are inconsistent with denial of the wife's interest as co-owner. The wife may borrow for community purposes and bind the community property (*Fielding* v. *Ketler*, 86 Wash. 194). Since the husband may not discharge his separate obligation out of community property, she may, suing alone, enjoin collection of his separate debt out of community property (*Fidelity & Deposit Co.* v. *Clark*, 144 Wash. 520). She may prevent his making substantial gifts out of community property without her consent (*Parker* v. *Parker*, 121 Wash. 24). The community property is not liable for the husband's torts not committed in carrying on the business of the community (*Schramm* v. *Steele*, 97 Wash. 309).

---

[2] Remington's Compiled Statutes, 1922, §§ 181; 182; 570; 989; 1145; 1342; 1419; 6890 to 6896, inc.; 6900 to 6906; 6908; 7348; 7598; 10572; 10575; 10577 and 10578.

The books are full of expressions such as " the personal property is just as much hers as his " (*Marston* v. *Rue,* 92 Wash. 129); " her property right in it [an automobile] is as great as his " (92 Wash. 133); " the title of one spouse . . . was a legal title as well as that of the other " (*Mabie* v. *Whittaker,* 10 Wash. 656, 663).

Without further extending this opinion it must suffice to say that it is clear the wife has, in Washington, a vested property right in the community property, equal with that of her husband; and in the income of the community, including salaries or wages of either husband or wife, or both. A description of the community system of Washington and of the rights of the spouses, and of the powers of the husband as manager, will be found in *Warburton* v. *White,* 176 U. S. 484.

The taxpayer contends that if the test of taxability under Sections 210 and 211 is ownership, it is clear that income of community-property is owned by the community and that husband and wife have each a present vested one-half interest therein.

The Commissioner contends, however, that we are here concerned not with mere names, nor even with mere technical legal titles; that calling the wife's interest vested is nothing to the purpose, because the husband has such broad powers of control and alienation, that while the community lasts, he is essentially the owner of the whole community property, and ought so to be considered for the purposes of Sections 210 and 211. He points out that as to personal property the husband may convey it, may make contracts affecting it, may do anything with it short of committing a fraud on his wife's rights. And though the wife must join in any sale of real estate, he asserts that the same is true, by virtue of statutes, in most States which do not have the community system. He asserts that control without accountability is indistin-

guishable from ownership, and that since the husband has this, *quoad* community property and income, the income is that "of" the husband under Sections 210-211 of the income tax law.

We think, in view of the law of Washington above stated, this contention is unsound. The community must act through an agent. This Court has said with respect to the community property system (*Warburton* v. *White*, 176 U. S. 494) that "property acquired during marriage with community funds became an acquệt of the community and not the sole property of the one in whose name the property was bought, although by the law existing at the time the husband was given the management, control and power of sale of such property. This right being vested in him, not because he was the exclusive owner, but because by law he was created the agent of the community."

In that case, it was held that such agency of the husband was neither a contract nor a property right vested in him, and that it was competent to the legislature which created the relation to alter it, to confer the agency on the wife alone, or to confer a joint agency on both spouses, if it saw fit,—all without infringing any property right of the husband. See, also, *Arnett* v. *Reade*, 220 U. S. 311 at 319.

The reasons for conferring such sweeping powers of management on the husband are not far to seek. Public policy demands that in all ordinary circumstances, litigation between wife and husband during the life of the community should be discouraged. Law-suits between them would tend to subvert the marital relation. The same policy dictates that third parties who deal with the husband respecting community property shall be assured that the wife shall not be permitted to nullify his transactions. The powers of partners, or of trustees of a spendthrift trust, furnish apt analogies.

The obligations of the husband as agent of the community are no less real because the policy of the State limits the wife's right to call him to account in a court. Power is not synonymous with right. Nor is obligation coterminous with legal remedy. The law's investiture of the husband with broad powers, by no means negatives the wife's present interest as a co-owner.

We are of opinion that under the law of Washington the entire property and income of the community can no more be said to be that of the husband, than it could rightly be termed that of the wife.

We should be content to rest our decision on these considerations. Both parties have, however, relied on executive construction and the history of the income tax legislation as supporting their respective views. We shall, therefore, deal with these matters.

The taxpayer points out that, following certain opinions of the Attorney General,[3] the Decisions and Regulations of the Treasury have uniformly made the distinction that while under California law the wife's interest in community property amounts to a mere expectancy contingent on her husband's death and does not rise to the level of a present interest, her interest under the laws of Washington, Arizona, Texas and some other states is a present vested one. They have accordingly denied husband and wife the privilege of making separate returns of one-half

---

[3] Opinion of Attorney General Palmer, September 10, 1920, (32 Op. A. G., 298); Opinion of Attorney General Palmer, February 26, 1921 (32 Op. A. G., 435).

The Opinion of Attorney General Stone, of October 9, 1924 (34 Op. A. G., 395), and his letter of January 27, 1925, referring thereto (See T. D. 3670) deal only with estate tax, and express no opinion on the question here involved.

See Opinion of Acting Attorney General Mitchell of July 16, 1927, as a result of which this and other suits were initiated (35 Op. A. G., 265).

the community income in California, but accorded that privilege to residents of such other states.[4],

He relies further upon the fact that Congress has thrice,[5] since these Decisions and Regulations were promulgated, re-enacted the income tax law without change of the verbiage found in §§ 210 (a) and 211 (a), thus giving legislative sanction to the executive construction. He stands also on the fact that twice the Treasury has suggested the insertion of a provision,[6] which would impose the tax on the husband in respect of the whole community income, and that Congress has not seen fit to adopt the suggestion.

On the other hand the Commissioner says that, granted the truth of these assertions, a different situation has been created as respects 1926 and subsequent years. For in the 1926 Act there was inserted a section which plainly indicated an intent to leave this question open for the future in States other than California, while closing it for past years. The section is copied in the margin.[7]

---

[4] O. D. 426, April, 1920; T. D. 3071, August 24, 1920; T. D. 3138, March 3, 1921; Regulations 62, Art. 31, 1921 Revenue Act.

[5] Act of November 23, 1921, 42 Stat. 227; Act of June 2, 1924, 43 Stat. 253; Act of February 26, 1926, 44 Stat. 9.

[6] The provision desired by the Treasury was as follows: " Income received by any community shall be included in the gross income of the spouse having management and control of the community property." This clause was in the 1921 Act as passed by the House. It was stricken out in the Senate. When the 1924 Act was introduced it contained the same provision, which was stricken out by the Ways and Means Committee and not re-inserted.

[7] SEC. 1212. Income from any period before January 1, 1925, of a marital community in the income of which the wife has a vested interest as distinguished from an expectancy, shall be held to be correctly returned if returned by the spouse to whom the income belonged under the State law applicable to such marital community for such period. Any spouse who elected so to return such income shall not be entitled to any credit or refund on the ground that such income should have been returned by the other spouse. (U. S. C. Supp. II. Title 26, Sec. 964a.)

We attribute no such intent to the section as is ascribed to it by the Commissioner. We think that although Congress had twice refused to change the wording of the Act, so as to tax community income to the husband in Washington and certain other states, in view of our decision in *United States* v. *Robbins*, 269 U. S. 315, it felt we might overturn the executive construction and assimilate the situation in Washington to that we had determined existed in California. Section 1212 therefore was merely inserted to prevent the serious situation as to resettlements, additional assessments and refunds which would follow such a decision.

The same comments apply to the Joint Resolution No. 88, 71st Congress, on which the Commissioner relies.[8]

---

[8] That the three-year period of limitation provided in section 277 of the Revenue Act of 1926 upon the assessment of income taxes imposed by that Act for the taxable year 1927, and the three-year period of limitation provided in section 284 of the Revenue Act of 1926 in respect of refunds and credits of income taxes imposed by that Act for the taxable year 1927 shall be extended for a period of one year in the case of any married individual where such individual or his or her spouse filed a separate income-tax return for such taxable year and included therein income which under the laws of the State upon receipt became community property.

SEC. 2. The two-year period of limitation provided in section 275 of the Revenue Act of 1928 upon the assessment of income taxes imposed by Title I of that Act for the taxable year 1928, and the two-year period of limitation provided in section 322 of the Revenue Act of 1928 in respect of refunds and credits of income taxes imposed by that Act for the taxable year 1928 shall be extended for a period of one year in the case of any married individual where such individual or his or her spouse filed a separate income-tax return for such taxable year and included therein income which under the laws of the State upon receipt became community property.

SEC. 3. The periods of limitations extended by this joint resolution shall, as so extended, be considered to be provided in sections 277 and 284 of the Revenue Act of 1926 and sections 275 and 322 of the Revenue Act of 1928, respectively.

SEC. 4. Nothing herein shall be construed as extending any period of limitation which has expired before the enactment of this joint resolution.

It is obvious that this resolution was intended to save the Government's right of resettlement, in event that the proposed test suits, of which this is one, should be decided in favor of the Government's present contention. See the Report of the Ways and Means Committee on the resolution (Cong. Record, June 11, 1930, pp. 10923–10925).

On the whole, we feel that, were the matter less clear than we think it is, on the words of the income tax law as applied to the situation in Washington, we should be constrained to follow the long and unbroken line of executive construction, applicable to words which Congress repeatedly reëmployed in acts passed subsequent to such construction, (*New York* v. *Illinois,* 278 U. S. 367; *National Lead Co.* v. *United States,* 252 U. S. 140; *United States* v. *Farrar,* 281 U. S. 624), reënforced, as it is, by Congress' refusal to change the wording of the Acts to make community income in states whose law is like that of Washington returnable as the husband's income.

The Commissioner urges that we have, in principal, decided the instant question in favor of the Government. He relies on *United States* v. *Robbins,* 269 U. S. 315; *Corliss* v. *Bowers,* 281 U. S. 376, and *Lucas* v. *Earl,* 281 U. S. 111.

In the *Robbins* case, we found that the law of California, as construed by her own courts, gave the wife a mere expectancy and that the property rights of the husband during the life of the community were so complete that he was in fact the owner. Moreover, we there pointed out that this accorded with the executive construction of the Act as to California.

The *Corliss* case raised no issue as to the intent of Congress, but as to its power. We held that where a donor retains the power at any time to revest himself with the principal of the gift, Congress may declare that he still owns the income. While he has technically parted with title, yet he in fact retains ownership, and all its incidents.

But here the husband never has ownership. That is in the community at the moment of acquisition.

In the *Earl* case a husband and wife contracted that any property they had or might thereafter acquire in any way, either by earnings (including salaries, fees, etc.), or any rights by contract or otherwise, " shall be treated and considered and hereby is declared to be received held taken and owned by us as joint tenants . . ." We held that, assuming the validity of the contract under local law, it still remained true that the husband's professional fees, earned in years subsequent to the date of the contract, were his individual income, " derived from salaries, wages, or compensation for personal services " under §§ 210, 211, 212 (a) and 213 of the Revenue Act of 1918. The very assignment in that case was bottomed on the fact that the earnings would be the husband's property, else there would have been nothing on which it could operate. That case presents quite a different question from this, because here, by law, the earnings are never the property of the husband, but that of the community.

Finally the argument is pressed upon us that the Commissioner's ruling will work uniformity of incidence and operation of the tax in the various states, while the view urged by the taxpayer will make the tax fall unevenly upon married people. This argument cuts both ways. When it is remembered that a wife's earnings are a part of the community property equally with her husband's, it may well seem to those who live in states where a wife's earnings are her own, that it would not tend to promote uniformity to tax the husband on her earnings as part of his income. The answer to such argument, however, is, that the constitutional requirement of uniformity is not intrinsic, but geographic. *Billings* v. *United States,* 232 U. S. 261; *Head Money Cases,* 112 U. S. 580; *Knowlton* v. *Moore,* 178 U. S. 41. And differences of state law, which may bring a person within or without the category

designated by Congress as taxable, may not be read into the Revenue Act to spell out a lack of uniformity. *Florida v. Mellon*, 273 U. S. 12.

The District Court was right in holding that the husband and wife were entitled to file separate returns, each treating one-half of the community income as his or her respective income, and its judgment is

*Affirmed.*

The CHIEF JUSTICE and MR. JUSTICE STONE took no part in the consideration or decision of this case.