## UNAKA & CITY NAT. BANK v. UNITED STATES.

### No. 5681.

Circuit Court of Appeals, Sixth Circuit.

June 11, 1931.

HICKENLOOPER, Circuit Judge, dissenting.

Cox, Taylor & Epps, of Johnson City, Tenn., for appellant.

William J. Carter, U. S. Atty., of Knoxville, Tenn., and C. M. Charest and E. E. Angevine, Bureau of Internal Revenue, both of Washington, D. C.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Under the provisions of the Judicial Code, section 24, par. 20 (U. S. C. Title 28, § 41 [20]; 28 USCA § 41[20]) appellant, Unaka & City National Bank, sued the United States, appellee, to recover $1,276.04, being income tax and interest thereon for the year 1921. Upon the hearing, the suit was dismissed. The facts are embodied in an original and supplemental stipulation.

Prior to September 11, 1920, the Unaka National Bank and the City National Bank were separate banking institutions located in Johnson City, Tenn. On that date they consolidated under the provisions of the Act of Nov. 7, 1918, c. 209 (Tit. 12, § 33 et seq., U. S. C. [12 USCA § 33 et seq.]), and became the Unaka & City National Bank, the appellant. This statutory procedure is rather simple. Omitting details, consolidation is accomplished upon such terms and conditions as are lawfully agreed upon by a majority of the board of directors of each bank, ratified and confirmed by the affirmative vote of the shareholders owning at least two-thirds of the outstanding capital stock of each bank, and approved by the Comptroller of the Currency.

It is stipulated that, as a result of the combination, appellant acquired all of the properties, both real, personal and mixed, and assumed all the liabilities of the Unaka Bank & City Bank, and that it issued its capital stock to the stockholders in the same proportion to their holdings of stock in the old Unaka Bank and City Bank. The supplemental stipulation goes into particulars as to the method pursued in effecting the consolidation. It sets forth that on September 11, 1920, the Unaka Bank went into voluntary liquidation or dissolution (see title 12, § 181 et seq., U. S. C. [12 USCA § 181 et seq.]), and no longer had any corporate existence except for the closing of its affairs; that the City Bank changed its title to the Unaka & City National Bank of Johnson City, Tenn. (see title 12, § 30, U. S. C. [12 USCA § 30]), and increased its capital stock $200,000 (see title 12, §§ 57, 58, U. S. C. [12 USCA §§ 57, 58]); that appellant, by the issuance of stock, paid for the assets it had acquired from the Unaka Bank through the consolidation; that the stockholders of appellant were the same individuals who had been stockholders in the old, constituent banks. With the assets of the Unaka Bank the appellant acquired the banking house for the sum of $38,500, this being the exact amount the Unaka Bank had paid for it in 1901. On June 29, 1921, appellant sold this banking house for $60,000. Its March 1, 1913, value was $51,260.

The proper basis upon which to compute appellant's profit is the point in issue. Appellant claims that this basis is the March 1, 1913, value. Appellee insists that it is the cost to appellant of the property acquired in September, 1920. If appellee is right, appellant's net taxable profit was $21,500, the amount upon which it paid. If appellant is right, its taxable profit was only $8,739.60, and it is entitled to recover the excess payment. We think the controlling statute is section 202(a) of the Revenue Act of 1921, 42 Stat. 229: "That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property. * * *"

By giving to the language of the stipulations its plain and ordinary meaning, i. e., appellant acquired the banking house after February 28, 1913, it seems clear, therefore,

that section 202(a) fixes the cost thereof to appellant as the basis for ascertaining its gain. However, appellant urges that this statute is not relevant, because, notwithstanding the stipulation to the contrary, the legal effect of the merger was not to vest the absolute ownership of the assets of the constituent banks in appellant, but rather to unite the two old banks under one head, retaining substantially their same corporate identity and assets, and that in this aspect the Unaka Bank, at the time of the sale of the banking house in 1921, was the real or beneficial owner thereof, and that, having acquired it before March 1, 1913, the proper basis for computing profit is found in section 202(b) of the Revenue Act of 1921.

To this contention we cannot agree. It is well understood that mergers, amalgamations, or consolidations of corporations may assume different forms and result in different relationships, but such considerations are not relevant here. We are dealing with a statutory consolidation the terms and conditions of which have been lawfully agreed upon, and, if the stipulations of fact are to be honored, it stands out that, pursuant thereto, appellant acquired the banking house for $38,500 on September 11, 1920, and issued its stock in payment therefor. We think appellant's contention is not only at variance with the undisputed facts, but is in conflict with title 12, § 34, U. S. C. (12 USCA § 34), the second section of the consolidation statute above referred to, which, upon the accomplishment of such statutory merger, vests all the rights, franchises, and interests of the constituent bank in every species of its property, personal and mixed, in the bank into which it is consolidated.

Appellant also relies upon section 202(b) of the Revenue Act of 1918 as interpreted by articles 1567 and 1568 of Treasury Regulation No. 45. It is enough to say that said section 202(b) was repealed as of January 1, 1921, by section 1400(a) of the Revenue Act of 1921 (42 Stat. 320).

We have examined section 202(c) with its paragraphs (1), (2) and (3), cited by appellant, but we find nothing relevant therein.

Our conclusion has further support in this: That in section 204(a) of the Revenue Act of 1924 (43 Stat. 253 [26 USCA § 935 (a)]) Congress did provide that where, in certain reorganization schemes, assets are transferred from one corporation to another, they shall retain the same basis in the new corporation as in the old. This is substantially the provision which appellant contends

was applicable in 1921, but which the Ways and Means Committee of Congress in its "Statement of Changes in the Revenue Act of 1921 by H. R. 6715 and the Reasons Therefor," thought did not exist.

Judgment affirmed.

HICKENLOOPER, Circuit Judge.

I cannot concur. The only question presented is whether, when there has been a consolidation or merger of two corporations, A and B, to form the new corporation AB, which latter acquires all the assets of A and B and assumes all of their liabilities, and which issues its stock to the former stockholders of A and B, "in the same proportion held by them" in A and B, AB shall thereafter be entitled to use, for income tax purposes under the act of 1921, and upon the sale (in 1921) of certain real estate previously owned by B, the same cost basis (here the March 1, 1913, value) as B would have been entitled to use had no consolidation intervened. The proper answer to this question seems to me to depend exclusively upon whether there has been a true consolidation and merger as distinguished from what should more properly be designated an exchange of property—property for stock—or a simple purchase and sale.

It may be conceded that a new basis might well be established in the case of a purchase of property, even of several kinds and in bulk, and the payment of the purchase price in stock or securities at an agreed valuation; but it is extremely difficult to see how such new basis of investment value in the hands of the transferee could be established without raising as of the same time the question of profit or loss to the transferor, and to the stockholders of the transferor; and the Revenue Acts have been peculiarly consistent in providing by express enactment that no loss or gain shall be recognized as to either the corporations or stockholders in event of reorganizations, consolidations, combinations, or mergers. See Revenue Act of 1918, § 202 (b), c. 18, 40 Stat. 1060; Revenue Act of 1921, § 202(c) (3), c. 136, 42 Stat. 230; Revenue Act of 1924, § 203(b) (3), c. 234, 43 Stat. 256 (26 USCA § 934(b) (3), etc. Thus, also, that the stockholder who, by just such a transaction as that with which we are here concerned, receives stock in the consolidated (or reorganized) company, in exchange for the stock theretofore held by him in one of the corporations which was a party to the consolidation, is not required to account for gain or loss in respect of the new stock, has

been authoritatively established in Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520. There would therefore seem to be no purchase and sale or exchange of property within the act upon which the new basis could be founded.

It would seem to me, also, a matter of supreme indifference whether the consolidation be effected by A acquiring all the assets and assuming all the liabilities of B, and issuing its capital stock to the former stockholders of B, by reversing such procedure, or by both A and B transferring their assets to an entirely new corporation, AB, which in turn assumes all liabilities of A and B. The important factor is that, by consolidating, the identities of both A and B are merged in AB, the businesses of both are continued, and the stockholders of both retain, presumably, the same monetary value of interest in the new entity. There is, then, no reasonable ground for contending that a right which belonged to B before the combination, albeit such right was only the right to use an admitted basis of valuation of real estate for income tax purposes, should not pass to AB, and be exercised by it when and if occasion arose. This conclusion would seem implicit in the very nature of the transaction—the right of B to the given basis, a property right, an asset, passing from B to AB.

But it is said that consolidations of corporations may assume different forms and result in different relationships but such considerations are not relevant here; that, if the stipulations of fact are to be honored, it stands out that pursuant thereto "appellant acquired the banking house for $38,500 on September 11, 1920, and issued stock therefor." This impresses me as subordinating the very substance of what is known to have taken place to a form of expression and as arriving at a construction of the stipulation by the isolation of a single expression from its context, which expression also seems to me to be contrary to the evident intent of the document as a whole and inconsistent with practically every other part of it,—a slip, or even, possibly, a pitfall into which counsel have been led or inadvertently fallen. The stipulation just as specifically concedes that the transaction was one of pure consolidation; that the building was acquired "pursuant to the consolidation agreement"; that the consolidated bank acquired all the properties of both parties to the consolidation, real, personal and mixed, and assumed all liabilities; that, after consolidation, the stockholders of the consolidated bank were "the same persons who were stockholders in the old Unaka National Bank and the City National Bank"; and that the stock of the consolidated bank was issued to them "in the same proportion held by them in the Unaka National and the City National Banks." Construing this stipulation by its four corners, keeping in mind what is general knowledge as to the method and mode of such consolidations and the provisions of the Code regulating them, and considering the matter from its practical viewpoint—with regard to substance rather than to form (Weiss v. Stearn, supra, at page 254 of 265 U. S., 44 S. Ct. 490, 492)—I cannot conclude that the expression that the property was acquired by the appellant "for the sum of $38,500.00 pursuant * * *" etc., meant anything at all but that $38,500 was the value at which it was carried upon the books of the Unaka National Bank before the consolidation and upon the financial statement of that bank which formed a part of the consolidation agreement. This position also gains force when we note the exact identity of this amount and the original cost of the building in 1901. In the case last cited Mr. Justice McReynolds says: "Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants." This language is especially pertinent to the issue before us.

Nor is it apparent to me why, if the fact of a consolidation be conceded, this consideration is not relevant here. Had the real estate been the property of the City National Bank whose charter was not surrendered, and which was used as the vehicle to effect the consolidation, doubtless no contention would ever have been made that the consolidated bank was not entitled to use the March 1, 1913, value. If this be so, it is not clear why the consolidated bank is not entitled to the same rights in respect of property of the Unaka National Bank, especially since the Act of Nov. 7, 1918, c. 209, § 2, 40 Stat. 1044 (12 USCA § 34) specifically provides that "the said consolidated national bank shall hold and enjoy the same and all rights of property, franchises, and interests in the same manner and to the same extent as was [were(?)] held and enjoyed by the national bank so consolidated therewith." Could anything be more explicit to the effect that the consolidated bank should be subrogated as regards property rights and interests to the exact position of the bank which was merged with it?

Finally, upon this branch of the case, we come to the meaning of section 202(a) of the

Revenue Act of 1921, supra, "that the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, *acquired after* February 28, 1913, shall be the *cost* of such property." (Italics mine.) Obviously "acquired" can mean in that association only "acquired by purchase or exchange," for otherwise there would be no "cost." The section could have no possible application to a gift of real estate, nor to a devise or inheritance. By the same token it should have no application to a consolidation of corporations in which there is a merging of interests, not a purchase and sale in the true sense, nor an exchange. We have been cited to no case holding the section to apply to a consolidation, and I doubt if such a precedent could be found, for otherwise the industry of counsel would have uncovered it.

But were the matter less clear than it seems to me from its inherent nature and from the absence of any provision in terms hopelessly inconsistent with the right claimed, I should feel "constrained to follow the long and unbroken line of executive construction, applicable to words which Congress repeatedly reemployed in acts passed subsequent to such construction." Poe v. Seaborn, 282 U. S. 101, 116, 51 S. Ct. 58, 61, 75 L. Ed. 239. See, also, McCaughn v. Hershey Chocolate Co., 283 U. S. 488, 51 S. Ct. 510, 75 L. Ed. ——, and cases there cited. Treasury Regulation 45, article 1568, was promulgated under the 1918 act, which contained the familiar provisions as to computing income or gain arising from the exchanges of property. This article precisely fits the case at bar. It provides, inter alia: "Similarly, *the cost after reorganization, merger or consolidation of the assets of A or of the consolidated corporation is the sum of the cost (or the fair market value as of March 1, 1913) of the assets of A and of B for the purpose of ascertaining gain or loss upon a subsequent sale.* The new invested capital of A or of the consolidated corporation is to be determined as if A and B were rendering a consolidated return as affiliated corporations." (Italics mine.) This position has never been abrogated by act of Congress, by judicial pronouncement, or by Treasury Regulation. Its natural equity seems to me apparent. It

was even more explicitly stated in article 1574 of Treasury Regulation 69 under the 1926 Act: *"In conformity with the principle of ignoring for tax purposes those reorganizations* which result merely in a change of form, the statute provides further * * * that the assets acquired by a corporation a party to the reorganization shall have *the same basis* for determining * * * gain or loss from subsequent sale as they had in the hands of the corporation from which they were acquired." (Italics mine.) See, also, article 1566(b) of Regulation 62, promulgated under the 1921 act.

Counsel for the government offers no argument to refute the persuasive effect of repeated re-enactment of the statute by Congress in substantially the same terms, and the failure to amend it, "in the face of the consistent administrative construction." We are asked, on the other hand, to imply an intent to require a new or different basis (the book value of the consolidating or merging company) because of the inclusion of section 204 (a) (7) in the Revenue Act of 1924, 26 USCA § 935 (a) (7), and are cited to the case of Anargyros v. Edwards, 22 F.(2d) 707 (D. C. N. Y.) and the "Statement of Changes in the Revenue Act of 1921 by H. R. 6715, and the Reasons Therefor" (Ways and Means Committee), as supporting the contention made. The case cited does not seem to me to be in point, and the statement of the Ways and Means Committee demonstrates, if it shows anything, that the change was intended to prevent *an increase* in the basis, through consolidation or reorganization, and to *compel the use of the same basis* as when the property was in the hands of one of the parties to such consolidation. The power to increase the basis upon reorganization under acts prior to 1924 is admitted. But, apart from the inaptness of these citations, nothing can be added to a taxing statute by implication. See cases cited in dissenting opinion in Aluminum Castings Co. v. Routzahn, 282 U. S. 92, 100, 51 S. Ct. 11, 75 L. Ed. 234. Unless clearly within the letter of the act, the subject is not bound. See Crooks v. Harrelson, 282 U. S. 55, 61, 51 S. Ct. 49, 75 L. Ed. 156.

For the reasons above stated, I feel constrained to respectfully dissent.