### DAUGHERTY v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 6856.

Circuit Court of Appeals, Ninth Circuit.
Jan. 30, 1933.

78

Albert L. Hopkins, Jay C. Halls, and Peter L. Wentz, all of Chicago, Ill. (Hopkins, Sutter, Halls & De Wolfe, of Chicago, Ill., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, John G. Remey, and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and E. L. Updike, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

SAWTELLE, Circuit Judge.

The respondent determined that the entire proceeds of a certain contract, hereinafter set forth, were taxable as the income of petitioner, despite an assignment of one-half of the proceeds of the contract by petitioner to his wife. The Board of Tax Appeals held that the determination of the respondent was correct; and this appeal is from the decision of the Board.

The tax in question is for the calendar year 1926, and was assessed under section 213 (a) of the Revenue Act of 1926, 44 Stat. 23, 26 USCA § 954 (a).

In 1912, petitioner, an attorney at law, and one Robert J. Folonie were engaged in litigation in the state of Illinois to establish the rights of one Mrs. Estelle Howland in a trust estate created by her father-in-law, John D. Jennings, who died in 1889. This litigation terminated unsuccessfully to Mrs. Howland. Certain adverse interests were represented by the law firm of Campbell & Fischer, of Chicago. In 1923, Edwin Jennings, the last surviving son of John D. Jennings, and brother-in-law of Mrs. Howland, died. Mr. Campbell, of the firm of Campbell & Fischer, upon learning that petitioner still represented Mrs. Howland, stated to petitioner that, in connection with the prior litigation, he had studied and briefed the question of Mrs. Howland's rights in the trust estate, and that he had reached the conclusion that, in view of the death of Edwin Jennings, Mrs. Howland was entitled to a substantial interest therein. Campbell offered to give his brief to petitioner. Petitioner said that he would ascertain the wishes of his client with regard to the matter, but that in no event could he handle litigation for her, because a position he then held with the Standard Oil Company of Indiana occupied all of his time and attention. It was orally agreed between Campbell and petitioner that petitioner would not engage in any of the litigation, but that petitioner was simply to furnish the client. At a conference between Mrs. Howland and her husband and petitioner and Campbell, it was agreed that a bill to construe the will should be filed, and that all of the work in connection with the proceeding should be performed by the firm of Campbell & Fischer, and neither petitioner nor Folonie would be required to do any work in connection with the case. The contract executed by Mrs. Howland and the attorneys, in Chicago, on November 5, 1923, is as follows: "I hereby appoint Harry A. Daugherty [petitioner], Robert J. Folonie, John G. Campbell and Herman A. Fischer, Jr., to act as my solicitors and attorneys in all matters pertaining to my interest in the trust estate founded by the last will of John D. Jennings, deceased. They are authorized to commence or participate in any proceedings they deem necessary in order to establish my interest therein. As their full compensation for services they are to receive an amount equal to forty per cent of any money or property I am awarded or receive in connection with the subject matter of said trust estate; it being agreed and understood that this compensation is to be in addition to any fees which may be awarded, either to me on account of my solicitors' fees, or directly to my solicitors, by any court, from the trust estate as a whole, on account of legal services rendered by them in any suit or suits which they instituted or participated in involving the subject matter above mentioned, but does not include anything which I may receive directly from the estate of Edwin Jennings, deceased, as distinguished from the said trust estate found by the will of John D. Jennings, deceased."

January 30, 1924, petitioner wrote a letter to his wife, inclosing his copy of the contract of employment with Mrs. Howland, and on the margin of the contract petitioner indorsed an assignment to his wife of an undivided one-half of his interest in the contract. Some time in 1925, petitioner orally advised Campbell of this assignment. At the time of this assignment or gift the litigation to which the contract related was pending and undetermined. There was no assurance that there would be a successful termination or settlement in favor of Mrs. Howland, and petitioner's interest in the contract and the value of the interest transferred to his wife was therefore wholly contingent and undeterminable.

In June, 1926, the litigation was settled, and Mrs. Howland received $943,605 in satisfaction of her claim. Pursuant to the contract, 40 per cent of this amount was paid

to the attorneys. Petitioner received $47,-180, or one-half of the amount due him under the contract of employment, and the other half was, pursuant to the assignment, paid to petitioner's wife, who deposited the money in her own name and used it for her own benefit and purposes.

The respondent added to petitioner's gross income for the year in question the sum paid to petitioner's wife under the assignment. The Board of Tax Appeals affirmed this determination on the ground that ·the sum in question represented compensation paid to petitioner for his legal services, and was therefore income taxable to him, under the decision of the Supreme Court in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731.

It is contended that in Lucas v. Earl, supra, there was no contract to which an assignment could attach, and no res or property which was susceptible of assignment; while in the case at bar there was a valuable contract which was income-producing, and which constituted an assignable property right of the petitioner.

In Lucas v. Earl, supra, it was agreed between a husband and his wife: "That any property either of us now has or may hereafter acquire * * * either by earnings (including salaries, fees, etc.), or any rights by contract or otherwise * * * shall be treated and considered, and hereby is declared to be received, held, taken, and owned by us as joint tenants, and not otherwise, with the right of survivorship." In sustaining a tax on the husband for the whole of the salary and attorney's fees earned by him, and taxable under a statute similar to the one here involved, the court said: "A very forcible argument is presented to the effect that the statute seeks to tax only income beneficially received, and that taking the question more technically the salary and fees became the joint property of Earl and his wife on the very first instant on which they were received. We well might hesitate upon the latter proposition, because however the matter might stand between husband and wife, he was the only party to the contracts by which the salary and fees were earned, and it is somewhat hard to say that the last step in the performance of those contracts could be taken by anyone but himself alone. But this case is not to

be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts, however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

Inasmuch as the contract of employment in this case created a relationship of attorney and client, there could be no transfer of the corpus or res, and the gift effected merely an equitable assignment of petitioner's possible future income. In Poe v. Seaborn, 282 U. S. 101, 117, 51 S. Ct. 58, 61, 75 L. Ed. 239, the court said: "The very assignment in that case [Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731] was bottomed on the fact that the earnings would be the husband's property, else there would have been nothing on which it could operate." So, here, the assignment could operate on nothing but the earnings of petitioner. The fact that petitioner did no work in connection with the litigation out of which the income arose does not alter the situation. His prior services in connection with that litigation undoubtedly prompted the parties in making the contract of employment which gave rise to the income, and his interest in the contract at the time of the assignment was, of course, wholly uncertain and contingent.

We are therefore unable to distinguish this case from the broad rule of Lucas v. Earl, supra, that the fruits should not be "attributed to a different tree from that on which they grew," and from cases in which the courts have held that anticipatory arrangements transferring income to accrue from personal services to be rendered by the assignor are unavailing for tax purposes. See Bishop v. Commissioner (C. C. A. 7) 54 F.(2d) 298; Luce v. Burnet, 60 App. D. C. 393, 55 F.(2d) 751; Parker v. Routzahn (C. C. A. 6) 56 F. (2d) 730; Blumenthal v. Commissioner (C. C. A. 2) 60 F.(2d) 715.

Affirmed.