## ROGAN v. MERTENS et al.

### No. 10933.

Circuit Court of Appeals, Ninth Circuit.

Feb. 13, 1946.

---

[14] See note 11, supra.

938

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, Rigmor O. Carlsen, and Maryhelen Wigle, Sp. Assts. to Atty. Gen., and Charles H. Carr, U. S. Atty., and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

Milton H. Schwartz and Frank M. Keesling, both of Los Angeles, Cal., for appellees.

Before DENMAN, STEPHENS, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by Ethel Strickland Rogan, as Executrix of the Last Will and Testament of Nat Rogan, Deceased, substituted for Nat Rogan, Collector of Internal Revenue for the Sixth Collection District, California, hereinafter called the Collector. The Collector claims error in the judgments below of $8,802.40 and interest to each appellee, being a refund to that extent of a tax payment in the sum of $20,-669.80 by each appellee taxpayer, respectively, for a tax period fixed by the Commissioner of Internal Revenue as between January 1 and September 1, 1938.

In this court the parties agreed that the appellees, Fernand Mertens, hereinafter called Mertens, and Victorine Catherine Renourd Mertens, hereinafter called Mrs. Mertens, were husband and wife, citizens of France; that both were in the United States with the status of resident aliens and that on their departure therefrom they left with the intent to return to the United States in that status; that their income was community property and that the income of each was kept on a cash basis for the separate tax liability of each to the United States, under the principles established in Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

## Mrs. Mertens' Tax.

The Collector's brief states that, "desiring to go to France [Mrs. Mertens] went to

the office of Collector of Internal Revenue, Nat Rogan, at Los Angeles, for the purpose of obtaining a certificate of compliance with the internal revenue laws. She was required to file on that date [June 21, 1938,] as a resident alien, a departing alien income tax return on Treasury Department Form 1040-C, for the period beginning January 1, 1938, and ending June 30, 1938, and reported thereon one-half of the then assumed earnings of the husband received during such period to June 30, 1938. The tentative tax computed thereon was the sum of $3,245.92 which Mrs. Mertens paid to the Collector, after which, on June 30, 1938, she departed from the United States for Paris, France." Her departing alien income tax dated June 21, 1938, stated New York as her place of departure, the *Normandie* as the steamer on which she was to travel, and the date of departure June 29, 1938. The record contains a copy of the Collector's certificate of compliance necessary for her departure, as required by Section 146 (e) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1078.

The Collector's answer admits the tax was demanded of Mrs. Mertens by the Commissioner for a tax period terminated on May 31, 1938, before a certificate of compliance was issued to enable her to depart.

The question with which we here are concerned is whether the Commissioner legally demanded of her on September 6, 1938, a second income tax based upon her husband's income earned, in large part, after May 31, 1938, and after her departure to France, but prior to September 1, 1938, on which date the Commissioner again declared her tax period terminated.

The Collector claims that though Mrs. Mertens had departed to France, the Commissioner nevertheless was authorized to demand a payment from her of a tax liability for such income of her husband for the period from January 1 to September 1, 1938, that is for a short year, under the provision of Section 146 (a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1077, for the assessment of a taxpayer of whom the Commissioner "finds" that he "*designs* quickly to depart from the United States or to remove his property therefrom." [1] (Emphasis ours.)

■ We do not agree. The wording of the statute shows that the Commissioner's extraordinary jurisdiction to assess for less than a year period does not exist except as to persons still in the United States who are found to have such "designs" as to a future departure therefrom or having departed had design to remove their property therefrom.

■ There is no evidence and no contention made here that Mertens or Mrs. Mertens, intending to return to the United States, designed to remove any of the property of either from the United States, much less any finding of the Commissioner or Collector of such a design. The certificate of compliance attached to Mrs. Mertens' departing alien tax return shows it was given for departure. It was not for a tax in view of the removal of property from the United States.

The evidence is uncontradicted that Mrs. Mertens, in France, was not seeking any action concerning her departure from the United States when Mertens, prior to September 1, advised the office of the Collector that he intended to depart from the United

[1] "Sec. 146. Closing by commissioner of taxable year.

"(a) Tax in jeopardy.

"(1) Departure of taxpayer or removal of property from United States.—If the Commissioner finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the tax for the taxable year then last past or the taxable year then current unless such proceedings be brought without delay, the Commissioner shall declare the taxable period for such taxpayer immediately terminated and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section the finding of the Commissioner, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of the taxpayer's design."

States for France on or about September 14, 1938, and desired to obtain the necessary certificate of compliance with the Internal Revenue Laws of the United States. Mertens was then advised by Deputy Collector Ogden, after consultation with the Collector's legal advisor, that he could not secure his certificate of compliance unless not only his *but also Mrs. Mertens' taxes were paid.* A sum was computed by the Collector for which Mrs. Mertens' agent prepared and filed a return which stated on its face her *prior* departure to France on the *Normandie* on the previous 29th of June.

It is our opinion that the Commissioner was not authorized to make a demand upon Mrs. Mertens for an income tax for the period from January 1 to September 1, 1938, and that she is entitled, at least, to the refund awarded her by the district court.

There is no evidence that Mrs. Mertens has not since returned to the United States as she expected or that she is seeking any tax avoidance. On the contrary, there appears an unwarranted demand upon her for payment of her taxes to secure the return of her husband to her in France.

However, even assuming the Commissioner's power so to demand from her a tax for the period ending September 1, 1938, the refund was properly adjudged below. The disputed items concern moneys claimed to be her income because, as alleged, it was paid to her by Loew's Incorporated, under a contract *with Mertens* to pay certain of *his* income taxes. The appeal was submitted to us by the Collector upon a statement of that contract in his brief, as follows:

"By the terms of this agreement, Loew's agreed to pay 'all taxes which may lawfully be assessed against me [Mertens] in the United States,' but only to the extent that they were based upon sums derived by him from services connected with the photoplay 'The Great Waltz.'"

Here is no agreement of Loew's with Mrs. Mertens and none with Mertens to pay taxes assessed against Mrs. Mertens. The court found that Loew's loaned her the money to pay the tax assessed against her, undoubtedly made to aid Mertens in his departure to France, but whether loan or gift to her or to him it was not income to her upon which the Commissioner could assess her. There is no merit in the Col-

lector's contention that the moneys received by her from Loew's constituted such income within Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918, and other cases upon which he relies.

The judgment in favor of Mrs. Mertens is affirmed.

## Mertens' Tax.

Mertens, designing to depart from the United States for France, notified the Collector on or about August 30, 1938, of that design and submitted to him data concerning his income within Section 146 (a) [2] of the Revenue Act of 1938 to obtain the departure certificate of compliance of Section 146 (e). The Commissioner, as provided in that section, on September 6, 1938, gave notice to Mertens of the termination of his taxable period as of September 1, 1938, that is, "immediately" after learning of Mertens' design to depart, and demanded payment of the tax claimed as due for that taxable period. It is not questioned that the period began on January 1, 1938. Such notice of termination and such demand of the Commissioner for the tax for such period are admitted in the Collector's answer.

Though Mertens' income is agreed to be on a cash basis, in computing the tax for the income to the declared end of the period, September 1, 1938, there were included as income in the period the estimated liabilities of Loew's to pay Mertens' income taxes when legally assessed against him. What the Commissioner sought to do was to pyramid Loew's future payments into the upper tax brackets of a high income period, in which Mertens, a French actor, with the stage name of Gravet, earned in twenty weeks—at the extraordinary salary of $6,000 per week—the sum of $120,000.

The sum demanded on September 6, 1938, was paid on September 7, 1938, and the Collector then gave Mertens his certificate of compliance. Mertens departed for France on or about September 15, 1938, intending to return to his status as an alien resident of the United States.

Mertens later duly filed his demand for a refund of that portion of the demand for the tax upon his income to September 1, 1938, which consisted of the amounts which were estimated would become due thereafter from Loew's promise to pay the taxes

---

[2] Footnote 1, supra.

lawfully assessed against him. The demanded refunds were refused and this suit filed for their recovery. The case was tried and judgment for Mertens refunding the tax on the portions of the income so claimed to be illegally included.

■ The first question before us is as to whether the Commissioner could include in his demand of September 6, 1938, for a tax on income up to September 1, 1938, estimated payments *to be* made to Mertens on the Loew's promises of its agreement with him. The Collector's brief submits the case to us with his statement of that agreement. Loew's had been assigned a prior agreement of Mertens with one Mervyn LeRoy. The Collector states that "The contract between Mertens and LeRoy, dated May 6, 1936, provided that 'Employer * * agrees to pay all taxes which *Artist* [Mertens] may be assessed in the United States, but not *his* taxes in France, and only for such sums which Artist derives from his employment through Employer.' This contract was assigned by LeRoy to Loew's Incorporated on July 29, 1938, by two contracts of that date, the terms of the first of which provided that 'We [Loew's] have accepted the same with the restriction that by our acceptance of the same we are assuming no liability under said contract except such liability thereunder as has arisen subsequent to April 15, 1938 in connection with the photoplay now entitled 'The Great Waltz,'; and the terms of the second of which provided that 'You [Loew's] agree to pay all taxes which may *lawfully be assessed* against *me* [*Mertens*] in the United States, but only to the extent that *such* taxes are based upon sums derived by me from my services in connection with said photoplay now entitled 'The Great Waltz.' This second contract likewise contained the provision that both Mertens and Loew's were to 'use every effort to the end that *said taxes* will be paid by September 10, 1938 and to the end that *I* [*Mertens*] shall be free to leave the United States on that date [3] * * * These two contracts of July, 1938, will hereafter be referred to as one contract." (Emphasis ours.)

What the Commissioner was entitled to demand upon learning of Mertens' design to depart, was the tax upon the income of the shortened period of the year allowed by Section 146 (a) of the Revenue Act. The language of the Act requires the demand of the Commissioner for the "immediate payment of the tax for the taxable period *so declared terminated*" and upon such demand "such taxes shall become immediately due and payable." [4] It is thus obvious that Loew's contract was to pay, *after* the demand, the tax on income for the period ending on September 1, 1938, that is six days before the demand. Loew's payment, if made at all, under its contract with Mertens would necessarily fall in a tax period after the one terminated on September 1, 1938, and after the Commissioner's demand. Upon the terms of Section 146 (a) and the admitted facts, we are required to affirm the judgment for Mertens.

There is no merit in appellant's contention that Loew's promises to pay taxes legally assessed is a constructive receipt of the money on or before September 1, 1938, or on the day of the demand made on September 6, 1938, even if the demand of that date be deemed an assessment.[5]

Since it is stipulated that Mertens' income is on a cash basis, a mere promise to pay, that is a mere chose in action, is not cash received. The promisor may not perform his promise. We are not required to consider what the situation would be if Mertens' income were upon an accrual basis, as in the cases of United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L. Ed. 347; Uncasville Mfg. Co. v. Commissioner, 2 Cir., 55 F.2d 893, and Commissioner v. Terre Haute Electric Co., 7 Cir., 67 F.2d 697, relied upon by the Collector. In all these accrual cases "the *obligation* represented income" to the taxpayer. Here there is no income until *after* the cash is paid to Mertens in discharge of a tax legally assessed.

It may be pertinent to point out, in view of the suggestions at the hearing of tax evasion by Mertens, that the Collector's pyramidal grasping at Loew's possible fu-

---

[3] Note that Mrs. Mertens' freedom to leave is not mentioned. She had left in June.

[4] Footnote 1, supra.

[5] Appellant in brief and argument based no contention here upon the fact disclosed by the record that the Collector assessed

the tax as of September 7, 1938, the day after the demand. Like all assessments, it was on the income of a prior tax period, here one ending September 1, 1938. Since the demand was illegally made to include Loew's liabilities, this assessment is illegal to that extent.

942

ture payments to bring them into the high tax brackets of Mertens' large earning period, is by an algebraic formula, unwarranted even if his income had been on an accrual basis.

An accrual future tax payment is a reducing to a present valuation of the promises of future performance. Such present worth of future tax payments could be subject to an algebraic formula only if, on looking forward, it is assumed that each successive annual tax on the Loew's tax payment of the taxes of the previous year was on the same successive incomes in the same income brackets in each year.

Undoubtedly when Loew's would make the payment in the succeeding tax period Loew's would again be liable to pay a tax thereon, but only if and insofar as it *contributed to net income* in that succeeding period. However, no one could tell whether there would be a net income in the succeeding tax period. Mertens in that period may have losses overcoming his gain of the first tax payment by Loew's in which event Loew's would be obligated to pay nothing then or thereafter. If there were a net gain for this first succeeding period no one could tell how much the net gain would be or in what income bracket it would fall and hence what amount of it Loew's would pay. If any were paid by Loew's it would create a diminished liability payable in a succeeding tax period. True, the process would continue in successive years or period, as long as net income would continue, until Loew's obligation became *de minimis*, but when that would be or how much the total payments, no one looking forward could compute on an algebraic formula or otherwise.

Nor was there any attempt at tax evasion in Mertens' accepting a loan from Loew's to meet such uncertain future tax liabilities of a sum much larger than necessary to cover them,—here large enough to cover the demand of tax from Mrs. Mertens which, as seen, Loew's had not contracted to pay.

Mertens at first strongly objected to such a loan transaction. He wanted to be *paid* the money to hold as his own. However, the testimony of a witness before Judge Yankwich shows that shortly before Mertens departed he agreed to accept the money from Loew's as a loan and the court so found and also that the moneys paid to the Collector were from moneys so loaned.

Since the district court heard the testimony of this witness and, having the opportunity to judge of his credibility, accepted his testimony as true, we cannot say that the findings as to the loan and the payment to the Collector from it are clearly erroneous. Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c. On the testimony the findings are clearly supported.

It follows that there is no merit in the Collector's contention that the payment by Mertens on September 7, 1938, of the money demanded by the Commissioner on September 6, 1938, for the income up to September 1, 1938, was a tax payment *by Loew's*, even if not legally demanded. It was a loan properly made in view of the uncertainties of Loew's future liabilities, solely for the taxes legally assessed.

The judgments in favor of Mertens and Mrs. Mertens are affirmed.