Santiago **ALBANESE D'IMPERIO,**
Plaintiff, Appellant,

v.

**SECRETARY OF THE TREASURY OF
PUERTO RICO,** Defendant,
Appellee.

**No. 4869.**

United States Court of Appeals
First Circuit.

June 6, 1955.

Orlando J. Antonsanti, San Juan,
Puerto Rico, for appellant.

Manuel J. Medina Aymat, Asst. Atty.
Gen., with whom Jose Trias Monge, Atty.
Gen., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and
MARIS * and WOODBURY, Circuit
Judges.

WOODBURY, Circuit Judge.

 This is an appeal from a judgment of the Supreme Court of Puerto Rico affirming a judgment of the Superior Court of Puerto Rico, San Juan Part, which sustained administrative action resulting in the assessment of a de-

* By special designation.

ficiency in income tax against the appellant for the calendar year 1949. Our appellate jurisdiction under Title 28 U.S.C. § 1293 is clear, for the appellant contends in this court as he did in both insular courts that § 24(b) of the Income Tax Act of Puerto Rico, quoted in the margin,[1] as applied to him, deprives him of his property without due process of law in violation of the Constitution of the United States,[2] as well as in violation of Art. II, § 7 of the Constitution of the Commonwealth of Puerto Rico, 48 U.S. C.A. § 731d note, and § 2 of the Organic Act of March 2, 1917, known as the Jones Act. 39 Stat. 951, 48 U.S.C.A. § 737.

The case is presented to us on an agreed statement of facts which can be briefly summarized. In January 1949, the appellant, a widower, and Iris de Juan, a widow, both with minor children born of their previous marriages, entered into an antenuptial agreement pursuant to the provisions of Book Fourth, Title III, Chapter I of the Civil Code of Puerto Rico, 1930 ed., the pertinent sections of which are quoted in the margin.[3] They included in the agreement a complete inventory of all their respective properties and by the agreement they undertook to effect a complete separation, not only of the property each then owned, but also of all property each might acquire in the future. Furthermore, in clause 6 they provided: "The parties hereby make known that having excluded from the marriage they are about to contract, the regime of the legal conjugal partnership (régimen de la sociedad legal de gananciales), the property that during the marriage each spouse shall acquire, shall be and become the property of each in absolute dominium."

The parties married on January 27, 1949 in accordance with their agreement, and in reporting their income for that year each filed a separate return and each paid a tax calculated on his and her respective income. The Secretary of the Treasury, however, took the position that § 24(b) of the Income Tax Act quoted above applied in spite of the antenuptial agreement. He, therefore, ruled that the appellant should have reported both his and his wife's income in a single joint return and paid a tax calculated on the total taxable income of both. Therefore the Secretary assessed a deficiency against the appellant in the amount of the difference between the tax due on his and his wife's combined income and the tax actually paid by the appellant on his own personal income. The appellant contested the assessment of his deficiency through the administrative remedies pro-

1. Act No. 74 of August 6, 1925 as amended by Act No. 31 of April 12, 1941, effective January 1, 1940.

"If a husband and wife living together have a net income for the taxable year of $2,000 or over, or an aggregate gross income for such year of $5,000 or over, the total income of both shall be included in a single joint return, and the normal and additional tax shall be computed on the aggregate income. The net or gross income received by anyone of the spouses shall not be divided between them."

2. In this case as in Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377, 382, we do not find it necessary to decide whether the due process clause of the Fifth Amendment or that of the Fourteenth Amendment is applicable for: "The restraint imposed upon [tax] legislation by the due process clauses of the two amendments is the same." Heiner v. Donnan, 1932, 285 U.S. 312, 326, 52 S.Ct. 358, 361, 76 L. Ed. 772.

3. "Section 1267.—Persons who may be joined in matrimony may, before celebrating it, execute contracts, stipulating the conditions for the conjugal partnership with regard to present and future property, without any other limitations than those mentioned in this Code.

"In the absence of contracts relating to property it shall be understood that the marriage has been contracted under the system of legal conjugal partnership.

"Section 1268.—In the contracts referred to in the preceding section the contracting parties can not stipulate anything contrary to law or morality, nor humiliating to the authority within the family pertaining respectively to the future spouses.

"All stipulations not in accordance with the provisions of this section shall be considered void."

vided by local law and on up through the Puerto Rican courts wherein, as already pointed out, he raised the same federal constitutional question he presents on this appeal.

Basically the appellant's contention is that the antenuptial agreement between himself and his wife is clearly valid under local law (indeed, he says that there is not even an iota of evidence that its purpose was to avoid taxes or that it was in any respect a sham or subterfuge) and that, by its clear terms, the agreement effected a complete separation not only of the properties but also of the incomes of the spouses. Wherefore he says that to require him to pay a tax on his and his wife's combined income is to require him to pay a tax measured by the income of another which the Supreme Court held in Hoeper v. Tax Commission, 1931, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248, violated the due process clause of the Fourteenth Amendment.

The Supreme Court of Puerto Rico, relying heavily on its opinion in Ballester v. Court of Tax Appeals, 61 P.R.R. 460 (1943), rejected this contention.

Although the Commonwealth of Puerto Rico, by direct inheritance of the law of Spain, has always had a legal community property system, see Chapter IV of Title III, Book Fourth of the Civil Code of Puerto Rico, 1930 ed., the court in Ballester v. Court of Tax Appeals, supra, held that under its system of community property the wife did not have a "vested interest" in income earned by the husband or produced by community property. Wherefore it found Hoeper v. Tax Commission, supra, readily distinguishable and held that under the rule of United States v. Robbins, 1926, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, there was no constitutional impediment to applying § 24(b) of the Income Tax Act to require a husband to report and pay the income tax on the entire net income of the conjugal partnership. This court affirmed. Ballester-Ripoll v. Court of Tax Appeals, 1 Cir., 1944, 142 F.2d 11, certiorari denied, 1944, 323 U.S. 723, 65 S.Ct. 55, 89 L.Ed. 581.

The Ballester case does not rule this one, for the spouses in that case married under the traditional community property system and the taxpayer's position was that as an incident of that system one half of the income of the community "vested" in his wife and so could not constitutionally be taxed to him under the rule of Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239. In the case at bar, however, the spouses married in accordance with an antenuptial agreement excluding "the regime of the legal conjugal partnership" and providing for a complete and final separation of their respective properties and incomes, and the taxpayer relies upon the terms of that agreement to effect the separation of his and his wife's respective incomes for income tax purposes. Nevertheless, we agree with the Supreme Court of Puerto Rico that the result reached in the Ballester case must also be reached in this one.

Certainly there is nothing in Hoeper v. Tax Commission, supra, if that case still speaks with authority, see Ballester v. Descartes, 1 Cir., 1950, 181 F.2d 823, 829, to indicate the existence of any constitutional limitation on the power of the Legislature of Puerto Rico, or for that matter of a State in the federal union, to enact legislation forbidding spouses from thereafter escaping the normal income tax consequences of their marital relationship by contractual arrangements entered into either before or after their marriage. And we think the local statutes have precisely this effect.

■ The reason for our conclusion can be briefly stated. It is that § 1268 of the Civil Code, quoted in footnote 3 supra, specifically provides that the parties to antenuptial contracts "can not stipulate anything contrary to law," and if they do, that provision of their contract "shall be considered void," and § 24(b) of the Income Tax Act, making a husband and wife living together a unit for income tax purposes had been the "law" in Puerto Rico for some nine years before the appellant and his wife entered into their antenuptial agreement. Thus,

while their antenuptial agreement is no doubt valid under local law for many purposes, we do not think that local law permits it to have any validity as a device to divide their respective incomes for income tax purposes. And, as we have said, we are not aware of any constitutional limitation on the power of the Legislature to forbid, at least prospectively, contracts between a husband and wife altering the normal income tax consequences of their marriage.

The Supreme Court of Puerto Rico was not concerned, nor are we, with the question whether the same result would be reached with respect to an antenuptial agreement like the present which had been entered into prior to the enactment of § 24(b) of the Income Tax Act. We express no opinion on that question.

The judgment of the Supreme Court of Puerto Rico is affirmed.