## O'DONNELL v. COMMISSIONER OF INTERNAL REVENUE.*
### No. 7002.

Circuit Court of Appeals, Ninth Circuit.
April 10, 1933.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for petitioner.

Sewall Key, John H. McEvers, and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Alva C. Baird, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

· Petitioner seeks to review a decision of the Board of Tax Appeals fixing a deficiency

*Rehearing denied June 2, 1933.

tax of $39,731.98 upon petitioner's income for the year 1923. The principal question in the case is whether or not the royalty of $114,908.31, upon which the deficiency is based, is income or is a return of capital, and this in turn depends upon the value of one-third of the capital stock of the San Gabriel Petroleum Company, owned by the petitioner, and upon the value of options upon the other two-thirds of that stock, all of which were exchanged for the royalty agreement to petitioner from which the amount above mentioned ($114,908.31) was received by the petitioner in 1923.

With the exception of this value all the facts were stipulated. The Board of Tax Appeals upon this disputed question found that the value of the above-mentioned property, exchanged by the petitioner for the royalty agreement, was not in excess of the royalties therefrom received by the petitioner prior to 1923, to wit, $413,672.14, and consequently held that the petitioner, having recovered his capital investment before the taxable year here involved, was chargeable with the amounts received in 1923 as income. The petitioner contends that this finding is not based on the evidence before the Board of Tax Appeals, and, since the burden of showing the value of this property was on the Commissioner, contends that the finding is erroneous.

A brief summary of the facts is necessary to explain the situation. In March, 1917, the petitioner and M. L. and L. A. McCray, for a nominal consideration, secured five development oil leases. In June, 1917, they transferred these leases to a corporation organized by them, the San Gabriel Petroleum Company, for all its capital stock, each receiving one-third thereof. On December 24, 1917, and December 31, 1917, respectively, petitioner secured, for nominal consideration, six-day options to purchase the remaining two-thirds of the stock, one-third owned by M. L. and one-third owned by L. A. McCray, for $75,000, to be paid to each of them for his one-third of the stock. Each option provided that the petitioner should assume all the outstanding indebtedness of the San Gabriel Petroleum Company, including a note to the bank for $45,000, in the event the option was exercised, thus relieving the sellers of their statutory stockholders' liability. Both options were to expire on January 6, 1918. On January 4, 1918, petitioner assigned both options to the Petroleum Midway Company, Limited, and on January 7, 1918, the day after the options expired, that company entered into an agreement with M. L. and L. A. McCray by which it assumed all the obligations

that were to be imposed upon petitioner, in the event that he had exercised the options, which agreement also recited that the petitioner had agreed to sell to it his one-third stock in the San Gabriel Petroleum Company. On January 9, 1918, petitioner entered into a separate agreement with the Petroleum Midway Company, Limited, at the time he transferred his one-third of the stock of the San Gabriel Petroleum Company to it, by which that company assumed the burden of developing the property covered by the leases, agreed to pay all the outstanding liabilities of the San Gabriel Petroleum Company and to pay to the petitioner one-third of the income from the oil properties after deducting therefrom the cost of development and the amount of the San Gabriel Company's outstanding obligations paid by the Petroleum Company, Limited, with 6 per cent. interest thereon.

█ Now it is evident that the parties to this transaction all considered that one-third of the stock of the San Gabriel Company was worth $75,000 over and above the obligations of the company during the period from December 31, 1917, to January 9, 1918, when the deal was consummated. L. A. McCray and M. L. McCray each accepted that amount for his speculation. The only difference between the McCrays and the petitioner is that the latter was willing to accept, or rather to retain, his interest in the speculation, freed from its obligations. The purchaser accepted this situation, assumed all the burdens of development, and paid the McCrays $75,000 each and agreed to pay to the petitioner a third of the net income derived from the leases after payment of expenses. The petitioner has not only recovered his $75,000, which puts him on an equality with his joint venturers, but had received in addition $338,672.14 prior to 1923 and received $114,908.31 in 1923. These facts point to the conclusion that $75,000 was the reasonable value of the property exchanged by petitioner on January 9, 1918, for the royalty interest he retained in the income derived from the oil properties, in the absence of testimony pointing to a different conclusion, such as the discovery of oil between December 31, 1917, and January 9, 1918, and justified the finding of the Board of Tax Appeals. The finding of the Board of Tax Appeals that the value of this property exchanged for the royalty agreement was not in excess of $413,672.14 amounts in effect to a finding that petitioner had theretofore recovered his capital investment in said royalty agreement and the stipulation of facts supports that finding. This is the fact with which the Board of Tax Appeals was particularly concerned and not the exact value of the property exchanged for the royalty agreement.

Another question remains to be determined. The petitioner assigned his royalty interest under his contract with the Petroleum Midway Company, Limited, to the Security Trust & Savings Bank, as trustee, under trust No. 5106, on July 25, 1919, which received and disbursed the income under said contract in the total amount of $348,986.66 up to and including December 31, 1922. During the year 1923 the trustee received $31,760.15 up to April 9, 1923, under trust No. 5106, which was revoked on that date and a new trust (No. 5549) substituted, changing the beneficiaries and the amounts they were to receive, under which the trustee received $83,984.08 during the balance of the year. The petitioner claims that he is not taxable for the income thus received and distributed by the trustee.

Under the Revenue Act of 1924 (43 Stat. 253, 275, 277) the income would be properly taxed to the creator of the trust (section 219 (h), 26 USCA § 960 note). Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 337, 74 L. Ed. 916. While it is true that section 219 (h) of the Revenue Act of 1924 was not expressly made retroactive, it is generally considered to be merely a declaration and clarification of existing law and not a change of legislative intent. Stoddard v. Eaton (D. C.) 22 F.(2d) 184; McCauley v. Commissioner (C. C. A.) 44 F.(2d) 919; Dickey v. Burnet (C. C. A.) 56 F.(2d) 917, 920. As was said by the Supreme Court in Corliss v. Bowers, supra, "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."

█ We think that, as the income received by the trustee was at all times under the control of petitioner by reason of his power of revocation, the petitioner is liable for the tax thereon. This case comes within the principles announced by the Supreme Court in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, and Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665, which we recently applied to the situation developed in Daugherty v. Commissioner of Internal Revenue (C. C. A.) 63 F.(2d) 77, decided January 30, 1933.

Affirmed.