EDMUND S. TWINING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THEODORE E. STEWART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES P. BERDELL, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70296–70298. Promulgated May 14, 1935.

*Watson Washburn, Esq.*, for petitioners.

*G. R. Sherriff, Esq., H. B. Linton, Esq.*, and *C. T. Nash, Esq.*, for respondent.

### OPINION.

LEECH: These consolidated proceedings involve income tax deficiencies determined by respondent for the calendar year 1930 in the amounts of $1,259.38 against Edmund S. Twining, $1,469.82 against Theodore E. Stewart, and $4,958.27 against Charles P. Berdell, Jr. Each petitioner claims an overpayment of income taxes for that year. The three issues involved will be subsequently stated as each is separately discussed.

The issue common to all three proceedings involves the question of whether the partnership of Berdell Brothers was a dealer in securities and thus entitled to inventory certain securities on hand at the beginning and end of 1930, for the purpose of determining the partnership income and the distributive share of each petitioner.

Throughout the year 1930 each petitioner was a member of the partnership of Berdell Brothers which maintained its principal office in New York City with branch offices in other cities. The firm of Berdell Brothers, as constituted from time to time since 1908 to and including 1930, has been engaged in the business of buying and selling securities as a dealer, specializing in the stocks and bonds of public utility companies, particularly those not listed on the exchanges. By 1922, many public utility securities had been listed on the exchanges and it became necessary for one of the partners to own a seat on the New York Stock and Curb Exchanges. Since then the firm has also engaged in the brokerage business. The two branches of business activities have been operated through separate departments and the partnership's activities as a dealer constituted its principal business.

Prior to and during 1930, the partnership issued sheets of specific offerings of securities for sale and bids. Securities were purchased in the firm's name, not for investment or speculation, but for imme-

diate resale at a profit to its customers comprised of individual investors, but chiefly the so-called professional buyers such as investment trusts and other investment institutions, banks, insurance companies, and other dealers. Sales by the partnership were made "over the counter", usually by telephone, and negotiated by the partners and the five employed salesmen. In making such sales they did not act in the capacity of brokers on commission. The volume of security sales of that character during 1930 amounted to about $10,000,000. In 1930 the partnership, as required by law, filed with the State of New York its notice as dealer in securities. For many years, including 1930, the partnership of Berdell Brothers has been listed as "Brokers and dealers in public utility securities" in the book, Security Dealers of North America, a statistical service widely used by security dealers.

On January 2, 1930, a new partnership was formed. It took over, at their then market value, all the securities owned by the former partnership. The fair market value of such securities on January 2, 1930, together with the cost of securities acquired during 1930, totaled $325,262.72. The fair market value of all securities owned on December 31, 1930, was $247,918.55 or a difference of $77,344.17. All of such securities were purchased by the partnership for resale to customers, including relatively small amounts of securities carried due to the failure of a dealer in Arkansas, to whom they had been sold, and those taken over because of bad accounts and errors.

The inventory loss of $77,344.17 was claimed as a deduction by the partnership on its return for 1930. The respondent determined that the partnership was not entitled to use inventories in computing its net income and disallowed the deduction thereby increasing each petitioner's distributive share of the partnership's net earnings as follows:

| | |
|---|---|
| Edmund S. Twining | $6,039.20 |
| Theodore E. Stewart | 12,968.45 |
| Charles P. Berdell, Jr | 28,182.96 |

As to that separate branch of Berdell Brothers' business in which, as a merchant, it bought securities and sold them over the counter to customers, we conclude that the partnership was a "dealer in securities" within the meaning of article 105, Regulations 74, and section 22 (c) of the Revenue Act of 1928. Accordingly, for the purpose of computing its net income, the partnership was entitled to inventory, at market, the securities in question carried for resale to customers and was entitled to a deduction of the inventory loss amounting to $77,344.17. *Harriman National Bank* v. *Commissioner*, 43 Fed. (2d) 950; *Estate of Harry E. R. Hall*, 29 B. T. A. 1255. Cf. *Algernon S. Schafer*, 32 B. T. A. 289.

Upon recomputation, the partnership net income will be redetermined in accordance with the foregoing conclusion for the purpose of determining each petitioner's distributive share and the individual tax liability of each petitioner.

The next issue pertains solely to the tax liability of Charles P. Berdell, Jr., whose petition assigns, as error, the respondent's disallowance of a deduction of $13,291.79 as a loss upon the sale of certain securities.

In December 1930 Charles P. Berdell, Jr., sold, at a loss, the following securities owned by him individually:

|  |  | Amount of loss |
|---|---|---|
| 100 | General Electric Co | $2,052.75 |
| 50 | Westinghouse Elec. & Mfg | 1,270.50 |
| 1 | United States Trust Co | 1,825.04 |
| 100 | United Light & Power "A" | 1,156.50 |
| 12 | R. H. Macy & Co | 894.01 |
| 50 | American Gas & Electric | 1,190.44 |
| 100 | United Gas Corp | 349.00 |
| 50 | American Power & Lt. Co | 1,155.75 |
| 100 | New York, Honduras & Rosario | 650.40 |
| 100 | Irving Trust Co | 2,747.40 |
| | Total loss | 13,291.79 |

Those sales were made through the firm of Berdell Brothers on the stock exchange. Petitioner received the full sales price thereof less taxes, brokers' commissions, and charges. He had no direct or indirect interest in those securities after the sales and had no agreement with anyone for their repurchase by him. He did not acquire any amount of any of those securities within 30 days prior to or after such sales. The sales were made for the purpose of establishing a loss.

A few days prior to such sales by petitioner, he discussed with his wife the advisability of her purchasing similar securities because he considered them good investments. Immediately after petitioner's sales (made through Berdell Brothers to others than his wife) he, on behalf of his wife, gave orders to Berdell Brothers to purchase the same quantities of the same securities in his wife's name. She paid the market price (within a fraction of the prices at which petitioner sold) plus taxes, commissions, and charges. She paid for the securities with a portion of the proceeds derived from the sale of her house at Stonybrook in 1927 for $32,000. Petitioner had made gifts of money and property to his wife prior to 1930, but made none during 1930. He did not furnish the funds with which his wife paid for the securities and she did not agree to resell them to petitioner. Petitioner did not reacquire any of such securities from his wife.

For the year 1930 petitioner and his wife filed a joint income tax return on which they reported a net income of $14,564.67 after deduct-

ing, *inter alia*, the amount of $26,762.94 as the loss sustained upon all sales of securities in 1930. The latter amount included the losses on the sale of all of the above itemized securities except 100 General Electric Co. sold at a loss of $2,052.75 but which was inadvertently reported as a profit.

In determining the deficiency asserted against Charles P. Berdell, Jr., the respondent eliminated from income the item of $2,052.75 inadvertently reported as a profit and disallowed as a deduction the amount of $13,291.79 as a loss sustained upon the 10 itemized sales in controversy. Respondent contends that such sales were not bona fide and, further, that where husband and wife file a joint return they constitute a single taxpayer and are not entitled to a loss deduction, under section 118 of the Revenue Act of 1928, where the husband sells and, within 30 days, the wife acquires substantially identical property.

This issue must be determined upon what was done, apart from petitioner's motive of establishing a loss for the purpose of decreasing the amount which would otherwise have been his tax liability for 1930. *Gregory v. Helvering*, 293 U. S. 465. While transactions involving husband and wife should be carefully scrutinized because of their confidential relationship, the test is whether the disputed transactions were *real* as distinguished from mere form without substance. *Joseph E. Uihlein*, 30 B. T. A. 399.

The uncontradicted facts are that petitioner actually sold, at market, and his wife, with her own funds, actually bought, at market, the securities in question through a broker. There was no reacquisition by petitioner. On such sales, petitioner sustained, in 1930, deductible losses aggregating $13,291.79, even though the loss is claimed as a deduction from gross income reported on a joint return. *Frank M. Arguimbau*, 31 B. T. A. 604; *Charles F. Fawsett*, 31 B. T. A. 139; *Joseph E. Uihlein*, *supra; Benjamin T. Burton*, 28 B. T. A. 1242.

The remaining issue involves only the tax liability of Edmund S. Twining. His petition assigns, as error, the respondent's determination that, upon the sale of land, buildings, and furniture at Southampton, New York, petitioner realized a gain of $35,525, instead of $34,375 as reported on his return. He now claims a loss on the transaction of $18,327.88.

This petitioner is a son of E. S. Twining, who died testate June 24, 1923, survived by his widow, Frances Georgina Twining, and his two sons, Edmund and John. After making certain specific bequests of money and a bequest of all jewelry, silver, household furniture, personal effects, etc., to Frances Georgina Twining, the decedent's will provided, in part, as follows:

Sixth. All the rest, residue and remainder of my estate, real and personal, of which I shall die seized or possessed and including any and all lapsed

legacies I give, devise and bequeath to said Giraud F. Thompson and Edmund Stairs Twining or such one of them as may undertake the execution of this trust, and to their or his survivor and successor or successors, in trust, nevertheless, to hold, invest and reinvest the same and to collect and receive the rents, issues, profits and income thereof and to apply the net rents, issues, profits and income thereof to the use of my wife FRANCES GEORGINA TWINING during her life, and on her death if she shall survive me or on my death if I survive her, I give, devise and bequeath one-half of my said residuary estate so directed to be held in trust to my son EDMUND STAIRS TWINING, and if he shall then be dead leaving issue then surviving I give, devise and bequeath the same in equal shares to such issue of his then surviving per stirpes and not per capita, and if there shall be no such issue of his then surviving I give, devise and bequeath the said one-half of my said residuary estate to my son JOHN HALIFAX TWINING, and if he also shall then be dead leaving issue then surviving to such issue then surviving in equal shares per stirpes and not per capita.

The remaining one half of decedent's residuary estate was bequeathed and devised in trust for John with limitations over upon certain events.

Included in the decedent's residuary estate were nine and one half acres of land situated at Southampton, Long Island, New York, together with improvements thereon consisting of a 20-room residence, garage, greenhouse, tool house, and chicken house. Such realty was included in the decedent's gross estate at a value of $50,000 for Federal estate tax purposes.

The decedent's widow, Frances Georgina Twining, died, testate, March 15, 1926, survived by her two sons, Edmund and John. Her will bequeathed the residue of her estate, including the furniture and fixtures in the house at Southampton, to Edmund and John in equal shares. The furniture and fixtures were included in her gross estate at a value of $4,480.75 for Federal estate tax purposes.

Neither petitioner nor his brother John ever resided in the house at Southampton subsequent to March 15, 1926, but rented the property, furnished, each year until its sale on October 1, 1930, for an aggregate rental of $39,500. During the same period they expended a total of $11,355.89 for maintenance, repairs, and renewals on both the buildings and household furnishings. Their purpose was to maintain the property in perfect condition with a view to its sale.

On October 1, 1930, petitioner and his brother sold their jointly owned land, buildings, furniture and fixtures at Southampton, for $125,000 less a commission of $6,250.

In his return for 1930, Edmund S. Twining reported that he acquired a one-half interest in the Southampton land and buildings on June 24, 1923, the date of his father's death, that his basis was $25,000 and that his profit from the sale was $34,375. He failed to include in his basis, for determining gain, any value for the furniture and fixtures included in the sale. The respondent increased the reported gain by $1,150, representing depreciation at the rate of 3

percent for three and five sixths years on the buildings valued by respondent at $20,000.

Petitioner contends that he did not acquire a vested interest in the real estate at Southampton until March 15, 1926, the date of his mother's death, that the value of the realty, *in toto*, was $150,000 on that date and that the expenditures for repairs and replacements offset any depreciation thereon.

Neither party disputes petitioner's acquisition of a one-half interest in the furniture and fixtures at Southampton, on the date of his mother's death pursuant to the terms of her will, namely, on March 15, 1926, on which date such personal property, *in toto*, had a value of $4,480.75. We are satisfied that, because of repairs and replacements, such personal property sustained no actual depreciation from March 15, 1926, to date of the sale. Thus, in determining petitioner's gain or loss from the sale of both realty and personalty at Southampton, his basis should include the amount of $2,240.36 for the personal property.

The principal issue is petitioner's basis, for determining gain or loss, as to the real estate included in the above mentioned sale. The applicable provision of the Revenue Act of 1928 provides:

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. &ast; &ast; &ast;

Under prior revenue acts the basis, as to property acquired by bequest or devise, was determined by its market value " at the time of such acquisition." The *time* of *acquisition* was the basic date, but, in the 1928 Act, Congress substituted the *date of decedent's death* as that date, and then, to cover situations to which the date of death seemed inapplicable, added the provision as to time of distribution. *Lane* v. *Corwin*, 63 Fed. (2d) 767; certiorari denied, 290 U. S. 644. In that case, the court construed the testatrix's will to mean that ascertainment of the ultimate remaindermen depended entirely upon the persons *in esse* at the termination of the trust (created for the benefit of the same persons who might become remaindermen if living at the time of distribution). The court held that since the taxpayers' interest in the realty was contingent, the will did not make a specific or

general devise of the remainder interest to the taxpayers and they should not be considered as having acquired the property at the testatrix's death. It followed that the value of the realty at the date of distribution was the basis for determining gain or loss, upon its later disposition by the taxpayer. Thus, even though the 1928 Act changed the rule fixing the basic date, the application of that rule still requires determination of whether the estate passing by will or intestacy is vested or contingent. The word " acquired " as used in section 113 (a) (5) of the 1928 Act had the same meaning as had the word " acquired " when used in the corresponding sections of the earlier acts. *Daniel Tracy Beers*, 31 B. T. A. 117. This meaning was the acquisition of a *vested right* in property, which right is directly related to such property and would increase or decrease in value correspondingly with the value of that property. *Brewster* v. *Gage*, 280 U. S. 327.

Pursuant to the laws of the State of New York, controlling here as to petitioner's property rights (*Crooks* v. *Harrelson*, 282 U. S. 55; *Poe* v. *Seaborn*, 282 U. S. 101, 110, and, as fully discussed in *United States Trust Co., Trustee*, 31 B. T. A. 473), we conclude that, under the will of E. S. Twining, petitioner acquired a vested remainder interest in the residue of the testator's estate both real and personal, at the time of the testator's death. He was designated by name, was *in esse* at date of decedent's death, and had an immediate right to the possession of the property upon the expiration of the precedent life estate. The will did not provide for future distribution to persons then to be ascertained. Possession and not the right to possession was contingent and that only upon survivorship. The vesting of legal title in trustees for purposes of the life estate did not prevent vesting of the petitioner's remainder interest. A temporary estate vested in trustees does not interfere with or prevent the vesting of a remainder or future estate entirely separate from the trust estate. *Craver* v. *Jermain*, 40 N. Y. S. 1056.

The Southampton property which petitioner owned jointly with his brother John and which was sold by them in 1930, formed a part of the residue of the testator's estate. Petitioner's interest therein having vested at date of the testator's death on June 24, 1923, was acquired by a general devise within the meaning of section 113 (a) (5) of the Revenue Act of 1928. Cf. *United States Trust Co., Trustee, supra; Lane* v. *Corwin, supra.* Although possession and enjoyment were postponed until March 15, 1926, his interest increased or decreased in value correspondingly with the value of the property during that interval. The fair market value of the property was $50,000 on the date of testator's death. Petitioner's basis, for determining gain or loss on sale of such realty, is $25,000. Due to replacements and repairs, the buildings sustained no actual

depreciation during 1926 to 1930, inclusive. This determination renders unnecessary a finding as to the fair market value of the Southampton realty on March 15, 1926.

> *Decision will be entered pursuant to Rule 50.*