THOMAS W. BEHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75428. Promulgated August 2, 1935.

*Paul L. Holden, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency in the petitioner's income tax for the year 1931 in the amount of $6,718.27. He further determined that the petitioner was liable for a penalty of 50 percent of the deficiency under section 293 (b) of the Revenue Act of 1928. The facts of record were presented in an "Agreed Statement of Facts." The assignments of error contained in the petition are as follows:

A. The Commissioner erred in allowing to the petitioner no deduction for loss suffered by him on certain sales of stock within the taxable year in the following amounts:

Losses taken as ordinary deductions_____ $7, 219. 35
Losses taken as capital net loss_____ 52, 172. 82

B. The Commissioner erred in determining that the petitioner's return was fraudulent with intent to evade tax, thereby incurring the penalty imposed by section 293 (b) of the Revenue Act of 1928.

The petitioner alleged certain facts which were intended to show that he is entitled to the claimed deductions for losses. The Commissioner's answer is in the form of a general denial. It does not contain a statement of any facts upon which the Commissioner relies to sustain the fraud issue, in respect of which issue the burden of proof has been placed upon the Commissioner by statute. See section 601 of the Revenue Act of 1928 amending section 907 (a) of the Revenue Act of 1924, as amended, and Rule 14 of the Board's rules of practice. Since the Commissioner's answer contained no statement of facts to sustain the fraud issue, the petitioner was not required to file a reply. See Rule 15. Counsel for the Commissioner moved at the time of the hearing that he be permitted to amend his answer to include a statement of facts supporting the fraud issue. Counsel for the petitioner objected. Counsel for the Commissioner was unable to give any good reason why such an amendment should be permitted upon the day set for hearing. His motion to amend was denied. He did not propose to offer any evidence to sustain his burden of proof

on the fraud issue except such as might be contained in the agreed statement of facts. The agreed statement of facts fails to show that any part of the deficiency was due to fraud with intent to evade tax. Thus, even though there is a deficiency in tax, there are at least two reasons why the Commissioner's action in imposing the penalty must be reversed; that is, he has not only failed properly to plead, but he has also failed to prove that any part of the deficiency was due to fraud with intent to evade tax.

The Commissioner, in determining the deficiency, disallowed $7,219.35 claimed as a loss on the sale of securities, and decreased a claimed capital net loss by $52,172.82. The petitioner now concedes that he is not entitled to deduct $3,375 claimed as a loss upon the disposition of 40 shares of capital stock of the First National Bank of Binghamton. The only issue in the case for decision by the Board, which is properly raised by the pleadings, is whether or not the petitioner is entitled to the remaining deductions for losses which he claims. The Commissioner disallowed the deductions because they represented " losses incurred in sales between husband and wife which are not considered *bona fide*." The Commissioner's argument to the Board is that the transactions were not *bona fide* sales. In support of his argument he calls particular attention to the fact that when the husband sold securities he transferred the proceeds of the sales to his wife and she bought a corresponding amount of the same kind of securities. The respondent would have the Board infer that the purchases which the wife made were in fact and in law made for and on behalf of the husband. The question must be decided upon the facts as stated by the parties in their "Agreed Statement of Facts."

The agreed statement of facts need not be set forth here in full. The petitioner's wife during 1931 owned " in her own right " property having a value in excess of $250,000. The petitioner and his wife maintained separate bank accounts and filed separate income tax returns. At various times during 1931 the petitioner delivered certain securities to his brokers with instructions to sell on the market. The brokers thereupon sold the securities at market. Thereafter, the petitioner received from the brokers the proceeds of the sales. Whenever the petitioner gave an order for his broker to sell, his wife, who had her own separate account with the same broker, ordered the broker to buy for her account at market the same number of shares of the same kind of stock which her husband had on that same day ordered the broker to sell. The broker made the purchases for the wife in accordance with her orders, and received a check upon her own bank account for the stock which he purchased for her. Before the wife gave her check to the broker in payment for the securities purchased for her, certain amounts were transferred to her bank account from the bank

account of the petitioner. The following quotation from the agreed statement of facts covering one of the items in controversy seems to be typical of all—at least the Commissioner has made no argument based upon any difference which there may have been between this particular transaction and any of the others:

(c) On October 21, 1931, petitioner delivered to J. S. Bache & Co., brokers at Binghamton, New York, with directions to sell on the market:

25 shares of Anaconda Copper Co.,

which said stock was on the said date sold by the said broker at the market price of 16 to Carlisle & Co., brokers. On the same day petitioner's wife ordered the said broker, J. S. Bache & Co., to buy for her account at the market price; the same number of shares of the same stock sold by her husband, and accordingly the said broker purchased for her from Carlisle & Co., and delivered 25 shares of the said stock at 16¼ per share, which was the market price thereof. The petitioner on October 26, 1931, received payment for the said stock from the said broker in the amount of $396.36, which represented the proceeds after the deduction of commission and tax. The said proceeds were given by petitioner to his wife and were deposited in her bank account October 26th. Likewise, on October 26, 1931, petitioner's wife paid to the said broker by check upon her bank account the purchase price of the said stock, to-wit, $409.38. On the said date Mrs. Behan had a balance in her bank account of $915.38.

It will be noted that this statement of facts which both parties have agreed upon recites that the petitioner's securities were " sold by the broker " and that the securities purchased for the wife were " purchased for her " by the broker. The petitioner " received payment " for the stock which he had sold and the wife " paid " the broker for the securities purchased for her " by check upon her own bank account." Furthermore, the amount deposited in the wife's bank account was " given " by the husband to his wife. The sales were made to entitle the petitioner to deductions from income. The statement further recites that none of the stocks now involved herein were subsequently reacquired by the petitioner. The wife in all cases received new certificates registered in her own name, separate records were maintained by the petitioner and his wife identifying the securities owned by each, and the securities of each were held in the separate custody of the separate owners. The wife received all dividends and interest on the securities acquired by her and returned those items in her separate income tax returns for all years subsequent to the date of acquisition. The petitioner, an engineer and head of a large manufacturing business, has been accustomed for many years to turn over to his wife all income received by him except his salary and bonus, which in 1931 amounted to approximately $31,000.

The record thus shows that the petitioner did not sell any of his securities to his wife. His sales were made to third parties through an established brokerage house. His wife's accounts were separate and she had a separate estate sufficient to meet her obligations. Cf. *Charles F. Fawsett*, 31 B. T. A. 139. The securities which the

wife acquired belonged to her absolutely and were in no sense the property of or under the control of the petitioner. Since the petitioner never reacquired the securities and did not sell with an option to repurchase, the " wash sales " provision (sec. 118, Revenue Act of 1928) has no application. Cf. *Commissioner* v. *Dyer*, 74 Fed. (2d) 685. Although in this case, as in a number of others in which similar losses have been allowed, the couple, consisting of husband and wife, can be said to have suffered no real loss since one of the two still owned the securities, nevertheless the two members of that couple are separate taxpayers, owning their property separately, and may not be denied their separate losses merely because of the circumstance that they are husband and wife. If the transfer of funds from the petitioner to his wife were unexplained, that would not afford sufficient reason in this case for denying the losses to the petitioner. *Frank M. Arguimbau*, 31 B. T. A. 604. Here the parties have stipulated, however, that the petitioner made certain gifts of money to his wife. There is a companion case to this one wherein the wife is claiming deductions for losses under similar circumstances. The statement of facts in that case shows that she returned to her husband some of the amounts which he advanced to her and also at times transferred funds from her bank account to his bank account apparently for the purpose of enabling him to make contemporaneous purchases of securities. The fact that this husband and wife aided one another in this way is not, in view of the other facts in the case, a reason for denying the petitioner deductions for his losses.

The petitioner not only intended to cease to be the owner of the securities involved herein, but he actually deprived himself of all ownership by a real sale. There can be no doubt either of the legitimacy or of the reality of the petitioner's losses from the facts as agreed to by the parties themselves. Circumstances such as are present in this case require careful and exhaustive scrutiny to determine whether or not an actual loss has been realized. But where, as here, it appears that actual losses have been realized, there is no valid reason for denying the deductions. *Benjamin T. Burton*, 28 B. T. A. 1242; *Edmund S. Twining*, 32 B. T. A. 600. After due consideration of all of the circumstances, the Board has concluded that the petitioner sustained the losses which he claims. No other reason has been suggested by the respondent why the deductions should not be allowed. Therefore the petitioner is entitled to them.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

BLACK, SEAWELL, and TURNER dissent.