JOHN E. ZIMMERMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SARAH A. F. ZIMMERMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82491, 82488. Promulgated July 13, 1937.

Henry S. Drinker, Jr., Esq., and Frederick E. S. Morrison, Esq., for the petitioners.

Hartford Allen, Esq., and Walter W. Kerr, Esq., for the respondent.

284

OPINION.

MILLER: These cases present for our consideration a familiar device for tax avoidance, now prohibited by section 24 (a) (6) of

the Revenue Act of 1934,[1] namely, the transfer of securities by one spouse to the other, to establish capital losses for deduction from income.

As the transactions involved in each of the two cases occurred prior to the enactment of the 1934 Act, our decision turns upon the question whether these transfers constituted bona-fide sales. That question turns upon the further question whether the seller, in each case, parted finally with all title and right of every kind in and to the securities transferred or whether he remained in a position of control thereof. *Commissioner* v. *Behan*, 90 Fed. (2d) 609.

Although it has been said in a number of cases that transfers between members of the same family should be subjected to searching scrutiny, the object of the scrutiny is to determine whether the actual formalities of a sale have been observed, and this Board and the courts have recognized the validity of husband-and-wife sales made to realize tax losses in numerous cases. *Andrew J. Peters*, 28 B. T. A. 976; appeal dismissed, 69 Fed. (2d) 999; *Benjamin T. Burton*, 28 B. T. A. 1242; *Joseph E. Uihlein*, 30 B. T. A. 399; affd., 82 Fed. (2d) 944; *Charles F. Fawsett*, 31 B. T. A. 139; *Frank M. Arguimbau*, 31 B. T. A. 604; *Edmund S. Twining*, 32 B. T. A. 600; affd., 83 Fed. (2d) 954, certiorari denied, 299 U. S. 578; *Thomas W. Behan*, 32 B. T. A. 1088; affd., *Commissioner* v. *Behan*, *supra; Du Bois Young*, 34 B. T. A. 648.

In the instant cases the petitioners, husband and wife, acted pursuant to the advice of counsel throughout. The record reveals a scrupulous compliance with the law as stated in the decisions of the Board, and of the courts. Cf. *Charles E. Mitchell*, 32 B. T. A. 1093, at p. 1130.

The sales were made in all cases at the fair market price, through a broker. *Commissioner* v. *Behan*, *supra; Du Bois Young*, *supra; Edmund S. Twining*, *supra*. Commissions were charged to the seller and the buyer and the tax was charged to the seller. *Commissioner* v. *Behan*, *supra; Edmund S. Twining*, *supra*. The petitioners maintained separate brokerage accounts, and upon the execution of each

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

*     *     *     *     *     *     *

(6) Loss from sales or exchanges of property, directly or indirectly, (A) between members of a family, or (B) except in the case of distributions in liquidation, between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 per centum in value of the outstanding stock. For the purpose of this paragraph—(C) an individual shall be considered as owning the stock owned, directly or indirectly, by his family; and (D) the family of an individual shall include only his brothers and sisters (whether by the whole or halfblood), spouse, ancestors, and lineal descendants.

order their separate accounts were charged and the usual broker's memorandum was sent to each. *Charles F. Fawsett, supra.* The transactions were treated as sales and purchases in each case upon the individual books of account of both seller and buyer. *Joseph E. Uihlein, supra.*

Each petitioner was financially able to buy and pay for all purchases made. *Commissioner* v. *Behan, supra; Du Bois Young, supra; Charles F. Fawsett, supra; Edmund S. Twining, supra; Andrew J. Peters, supra.*

There was no agreement or understanding between the petitioners that the purchaser would hold the transferred securities for the other, or that the purchase price would be returned to the purchaser; or that the purchaser would repurchase or reacquire the securities sold. *Du Bois Young, supra; Edmund S. Twining, supra; Joseph E. Uihlein, supra.*

There was, in fact, no reacquisition of any of the securities sold, by either purchaser, but instead such securities were, in each instance, retained as a part of the separate estate of the purchaser or sold to strangers. *Du Bois Young, supra; Joseph E. Uihlein, supra; Edmund S. Twining, supra.*

Dividends and interest received by the respective petitioners upon securities so purchased and held were returned in their income tax returns for subsequent years. *Thomas W. Behan, supra.*

The fact that there were simultaneous sales—husband to wife and wife to husband—each selling different securities to the other, but all in the same transaction, arranged by counsel for petitioners and consummated by the joint action of petitioners, petitioners' secretary, petitioners' counsel and petitioners' broker, did not cause the sales to be any the less bona fide. The question is whether "the seller each time followed a usual procedure in making absolute *bona fide* sales of such property which would serve to fix any losses so that they would be realized and so deductible from gross income under section 23 of the Revenue Act of 1928, subdivision (e) (1), (2) * * *." *Commissioner* v. *Behan, supra.* In both the *Behan* case and the *Fawsett* case similar situations existed, and in each case the sales were held to be bona fide.

Respondent contends that the sales were not bona fide because the purchase price of the securities purchased by Sarah Zimmermann was paid, in part at least, by John Zimmermann from funds realized by him from the sale of the same securities.

This contention is based, apparently, upon the fact that on May 15, 1933, Zimmermann deposited in an individual and joint account of himself and his wife the sum of $16,804.20, following which, on May 17, 1933, he drew against the same account a check in the amount of $17,000, which was credited to Sarah Zimmermann's

brokerage account. These transactions took place nearly five months after the sales of securities under consideration. The evidence shows that Sarah Zimmermann's credit with her brokers was good at all times; that her dealings were protected by adequate collateral, and, as a matter of fact, her debit balance with her brokers was wiped out shortly after by sales of securities and a credit balance of approximately $20,000 was paid over to her by them. Moreover, Sarah Zimmermann had actually drawn a check in the amount of $17,000 on the same account and for the same purpose, but for some reason it was not available at her husband's office when he was ready to send it to the broker's office, so he drew another in the same amount. The amount of $17,000 was, comparatively, only a small part of the total price of the securities purchased by Sarah Zimmermann.

Even if we treat the $17,000 as John Zimmermann's, throughout the transaction, the result is the same, for the Board has sustained sales in which the wife's purchase money was the gift of the husband. Cf. *Commissioner* v. *Behan, supra;* *Arguimbau* v. *Commissioner, supra.* But under all the circumstances of separate accounts here present, we need not go so far. The Board has also upheld as bona fide sales made and purchases effected with funds kept in a joint account of husband and wife. *Carl P. Dennett,* 30 B. T. A. 49.

The situation in this case comes clearly within the test applied by the court in *Commissioner* v. *Behan, supra,* where it said:

What makes weight in favor of the Commissioner's contention that gifts were the only results of the transactions are such inferences as might be drawn from the fact that the respondents were married and because of that relationship and the fact that each helped the other finance purchases the financial well being of one might inure to the benefit of the other. Yet it was shown that each was financially able to buy and pay for all purchases made leaving their mutual financial assistance but a convenience; not a necessity without which the purchases were impossible. * * *

The Commissioner points out also that Zimmermann carried out the sales on his wife's behalf as well as his own, but we can find nothing objectionable in such an agency. Sarah Zimmermann was informed of his intentions, and, it appears, generally left such matters to him. The fact that a husband wholly manages and controls his wife's property as her agent does not alter the ownership of the property itself. Cf. *Poe* v. *Seaborn,* 282 U. S. 101. Under the laws of Pennsylvania a wife may hold a separate estate, make contracts, and buy and sell property of the character here involved. Purdon's Pennsylvania Statutes Annotated, title 48, Marriage §§ 31, 32; Penn. Laws, 1893, p. 344 (Act of June 8, 1893, § 1, 2); Dig. Penn. Law (1921) §§ 14569, 14570, 14574. She can also act through an agent and her husband can act as her agent. See *Goedecke* v. *Mock,* 174 Atl. 607; *Fitzgerald* v. *Kwaterski,* 174 Atl. 596; reversed on

another point, 178 Atl. 385. See also *Commissioner* v. *Behan, supra,* citing *Commissioner* v. *Hale,* 67 Fed. (2d) 561.

In both *Charles F. Fawsett,* 31 B. T. A. 139, and *Edmund S. Twining,* 32 B. T. A. 600, the Board upheld, as bona fide, sales made by husband to wife and wife to husband, where the husband acted both for himself and his wife. The important consideration is that the sales in each case were made in such manner as to divest the seller of title and control, according to the tests which have been laid down in the decisions.

We conclude, therefore, that the sales of the various stocks and bonds by Zimmermann and by his wife were bona fide and the resulting losses should, accordingly, be recognized for tax purposes.

At the conclusion of the hearing of this case the presiding Board Member, after a full consideration of all the evidence presented, held that neither petitioner made the sales here in question with an intention to defraud the Government of income tax properly due. After a full review of the evidence, we are of the same opinion.

Respondent abandoned this issue in his brief. In any event, as we have found that the sales were bona fide, the finding necessarily follows that there was no fraud. *Du Bois Young, supra; Thomas W. Behan, supra;* and the penalties assessed will be abated.

We have found on uncontradicted testimony of Zimmermann the cost of the Pioche Mines, Consolidated, bonds and their fair market value at date of sale. They were bought at par and sold at market. With the first $5,000 lot bought in 1930 Zimmermann received a stock bonus of 500 shares. These 500 shares had then a fair market value of $1 each; and this value should be considered in determining the cost of this lot of bonds to Zimmermann.

With respect to the second $5,000 lot of bonds of the Pioche Mines, Consolidated, petitioner, John E. Zimmermann, failed to show that he sustained a capital loss. He subscribed for the last $5,000 block of these bonds before December 29, 1930; paid for half of them on December 29, 1930, and for the other half in January 1931. The statute, section 101 (c) (8), Revenue Act of 1932, defines capital assets as property held by the taxpayer *for more than two years.* According to the evidence, Zimmermann may have acquired these bonds (by subscription of the whole of the $5,000 lot, and by actual delivery of one-half of this lot) as late as December 28, 1930, and since the sale was made on December 28, 1932, he would not have held any of the last $5,000 lot *more* than two years. The sale and transfer of title took place on December 28, 1932, although the bonds were not actually delivered until the next day. We held in *Harriet M. Hooper,* 26 B. T. A. 758, that the day of purchase is to be excluded (which we have assumed to be December 28, 1930, since the testimony does not permit us to assume the date to be earlier) and the day of

sale to be included (here December 28, 1932) in reckoning the period, and unless it covers one day more than two years, the requirement of the statute has not been met. Here, it will be seen, the period December 29, 1930, to December 28, 1932, is precisely two years, and hence, under the rule of that case, the last $5,000 block of Pioche Mine bonds was not a capital asset and any loss on their sale is therefore subject to the limitations of section 23 (r) (1). The capital net loss will be reckoned without them.

*Judgment will be entered in each case under Rule 50.*