**Thelma Jo LANGE, Plaintiff-Appellee,**

v.

**R. L. PHINNEY, District Director of Internal Revenue Service, and the United States of America, Defendants-Appellants.**

**No. 73–3606.**

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1975.

Rehearing and Rehearing En Banc Denied March 13, 1975.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Anthony J. P. Farris, U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., Meyer Rothwacks, Chief, Tax Div., Elmer J. Kelsey, Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellants.

Joseph P. Kelly, Victoria, Tex., Moses Goldberg, San Antonio, Tex., for plaintiff-appellee.

Before DYER, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Thelma Jo Lange, (taxpayer) initiated this suit to restrain the assessment and collection of income taxes allegedly due for the taxable years 1960 and 1961 and to quash the tax liens and notice of federal income tax liens arising from such assessments. The district court, over the repeated objections by appellants, the District Director of the Internal Revenue Service and the United States, that it was without jurisdiction by virtue of Title 26, U.S.C., Sec. 7421(a) barring suits to enjoin the assessment and collection of taxes, determined that it did have jurisdiction and found in taxpayer's favor, granting the requested injunctive relief. The sole issue before us is whether the district court correctly assumed jurisdiction. We find that the circumstances shown by the record do not bring taxpayer within the *Enochs* exception to Sec. 7421(a), Enochs v. Williams Packing and Navigation Co., 1962, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292. Accordingly, we reverse, with directions to dismiss for lack of subject matter jurisdiction.

The operative facts are as follows. During 1960 and 1961, the taxable years in issue, taxpayer and her then husband, Harry Noe, were separated and living apart. Both were residents of Texas, a community property state. See 13 Vernon's Tex.Ann.Civ.St., art. 4619, Sec. 1, repealed 1969 and recodified, Vernon's Tex.Ann.Civ.St. Family Code Sec. 5.02 et seq. Noe, an attorney, did not contribute to taxpayer's support. She was unaware of the amount of his income and did not exercise any control over it. Taxpayer supported herself from her salary as a school teacher.

On January 2, 1962, taxpayer was granted a divorce. In connection with the divorce, and incorporated into the Texas divorce decree, the two entered into a property settlement agreement. Under its terms, taxpayer gave up any and all interest in Noe's law practice. Each agreed to file separate income tax returns and to assume responsibility for the income tax liability as to their respective incomes.[1] It is not disputed that the assumption of her income tax liability by Noe for the income he earned was a factor in taxpayer's renouncing her interest in the law practice and in arriving at a division of community property.

Taxpayer did file tax returns on the income she earned as a teacher.[2] Her former husband, however, failed to file tax returns for those years. In 1964, the IRS began a criminal investigation of Noe and later entered into a settlement agreement with him, under which he paid taxes on half of the entire community income for those years. The IRS then began its pursuit of taxpayer for the income taxes due on the other half of the community income for 1960 and 1961, culminating in the present suit.[3] Statutory notices of deficiency were issued and assessments made after taxpayer failed to petition the tax court for a redetermination of her tax liability.

Taxpayer presented two arguments in the court below in support of her conten-

---

1. The property settlement agreement provided:

   It is further agreed that the parties shall file separate income tax for the years 1960 and 1961 upon the amounts and monies which they have each received by their separate endeavors, and that each of said parties shall assume the payment of the income taxes for their respective incomes for the years 1960 and 1961.

2. Taxpayer filed her 1960 tax return on September 1, 1961, reporting gross income of $6,934.99. She filed her 1961 tax return on July 18, 1963, reporting gross income of $4,463.52.

3. The IRS determined that taxpayer's gross income, as augmented by Noe's income, was $36,107.81 for 1960 and $34,222.01 for 1961.

tion that she was not liable for the taxes. First, she argued that consents she signed[4] extending the limitations period for the taxable years 1960 and 1961 were inoperative because obtained by misrepresentation of an IRS agent; and the assessment was therefore barred by the running of the statute of limitations. Second, she argued that the property settlement agreement incorporated into the Texas court decree divested her of any interest in Noe's income for 1960 and 1961 and relieved her of all liability for taxes on that income. In support of equity jurisdiction, she relied on her inability to pay the tax and sue for a refund because of her lack of funds.

The district judge reached the merits and held that the assessment for 1960 was barred because the consent extending the limitations period was invalid, agreeing that it had been obtained through misrepresentation. He found that the 1961 assessment was not barred because of the operation of Title 26, U.S.C., Sec. 6501(e), providing a six-year statute of limitations where there is a 25% omission of gross income from an income tax return. He held, nevertheless, that taxpayer was still not liable because the compromise agreement between the IRS and Noe settled the entire unpaid income tax liability of both Noe and taxpayer.

The district court was in error in reaching the merits. Title 26, U.S.C., Sec. 7421(a) provides, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Its purpose, elaborated by the Supreme Court in *Enochs,* is to withdraw jurisdiction from state and federal courts to entertain suits seeking injunctive relief against the collection and assessment of taxes,

> and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue.

370 U.S. at 7, 82 S.Ct. at 1129, 8 L.Ed.2d at 296. The Supreme Court nevertheless fashioned an exception to Sec. 7421(a) which will allow suits for injunctive relief to proceed in circumstances which will not undermine the purpose of the anti-injunction statute:

> [I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation, the exaction is merely in "the guise of a tax." Id.

The *Enochs* test is twofold. Suits for injunctive relief can proceed if two conditions exist: (1) it is clear that under no circumstances could the government ultimately prevail on the merits of its claim; and (2) equity jurisdiction otherwise exists. In approaching any case seeking injunctive relief from the assessment and collection of a tax, a federal court must follow the further strictures of *Enochs*:

> [T]he question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed. To require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act—protection of the collector from litigation pending a suit for refund. 370 U.S. at 7–8, 82 S.Ct. at 1129, 8 L.Ed.2d at 296–297.

---

4. On March 2, 1965, taxpayer executed a Form 872 consent, extending the period of limitations for 1961 to December 31, 1966. Additional consents, signed on September 9, 1966, extended the period of limitations as to 1960 and 1961 until December 31, 1968.

■ It is unnecessary to reach the issue of whether equity jurisdiction otherwise exists because the government, at the time of suit, did have a chance of prevailing on the merits of its claim. We intimate no views, however, as to the ultimate merits.

We turn first to the issue of the validity of the consents, which the district court held barred the assessment for 1960. Taxpayer contended that she was misled into signing the consents extending the period of the statute of limitations. The alleged misrepresentation is contained in a letter sent to taxpayer on March 5, 1964, by Special Agent Stribling of the Internal Revenue Service during an investigation of taxpayer's former husband's criminal tax liability. The sentence which taxpayer allegedly relied upon in signing the consents is as follows:

> I want to assure you that your interests will be respected, and we intend no involvement of you in the matter, but can no doubt save considerable time in our investigation by talking with you about it.

Taxpayer contended below that she was lulled into believing that her tax liability was not in issue, and that the actions of the agent in misleading her were intentional and coercive. When the consents were mailed to her, the first almost a year after she received the letter and the second and third well over a year later,[5] indicating on their face that her tax liability was involved, she nevertheless believed that she was only cooperating in the investigation of her former husband. Further, she was in a state of severe anxiety which colored her ability to respond intelligently to the request that she sign the consents.

The government contended that there was no misrepresentation in the letter and that there was no reasonable reliance. It did not offer evidence by way of affidavits, however, at the hearing on the motion to dismiss, other than an affidavit that the consents were signed.

Taxpayer argues that evidence adduced at trial by the government may not be considered by us in ruling on the correctness of the district court's decision to assume jurisdiction because it was not presented at the hearing on the motion to dismiss.[6] It is not necessary to decide whether we are so limited because we are of the view that the evidence adduced by taxpayer at the hearing revealed issues of fact and law requiring dismissal.

The evidence before the district court when it considered the motion to dismiss consisted of the letter, the divorce decree, an affidavit by a trial attorney in the Tax Division of the Department of Justice attesting to the fact of execution of the consents, and an affidavit signed by taxpayer attesting that the letter led her to believe that she would not be involved in any tax liability other than that which related to her former husband's.

Whether there is a misrepresentation contained within the letter, and such fraud in the procurement of the consents, as to render invalid the consents raises duly factual issues which may not be resolved initially in the district court, but may be addressed only in the Tax Court or in a suit for refund. See Heidelberg v. Martin, 5 Cir. 1968, 395 F.2d 988. The letter raises issues of reasonable interpretation. For example, it may mean that Mrs. Lange was not to be involved in any tax disputes or that she was not to be involved only with regard to her former husband's tax investigation. Whether any misrepresentation was willful raises issues of fact requiring the presentation of evidence in support.

---

5. See footnote 4, supra.

6. At trial, Special Agent Stribling testified that he had not intended to deceive, that there was no need to in any event because taxpayer had voluntarily cooperated earlier, and that he was merely trying to allay her apprehensions that her ex-husband would discover that she was aiding the investigators. Further, he was concerned only with a criminal investigation of Mr. Noe and had nothing to do with the civil audit of taxpayer and the procuring of the consents.

That the consents related to Mrs. Lange's tax liability and were received long after the letter from Special Agent Stribling also raises fact issues as to the existence and reasonableness of reliance.

Viewing this evidence alone, it is not clear that the government could not establish that the consents were not obtained by misrepresentation, or that, if misrepresentations existed there was no reasonable reliance. We need only quote from the letter brief of taxpayer's attorney to the district judge on this issue: "It is clear from the case law cited by both parties and the fact situation presented here that the Court is faced with a duly factual question to be determined by the trier of facts. Therefore, the government's motion to dismiss for lack of jurisdiction should not be granted." To the exact contrary, in such circumstances the district court has no choice but to grant the government's motion to dismiss.

Taxpayer next contended that the property settlement agreement incorporated into the Texas court decree relieved her of responsibility for the tax on her former husband's income.[7] She argued that the Texas court decree altered ownership rights in the income earned by her former husband during 1960 and 1961 and was an adjudication that she had no rights or interest in this income. Rather, she says, it shifted responsibility for payment of taxes on this income to Noe because she had, in effect, paid her share of the tax by having it deducted from the amount she received on divorce. Because Sec. 7421(a) does not prevent suits for an injunction brought by an individual whose property has been levied upon to pay the tax obligations of another, Campbell v. Bagley, 5 Cir. 1960, 276 F.2d 28, taxpayer urges that the district court did have jurisdiction.

Taxpayer's reliance on *Campbell* is misplaced. In that case, the IRS assessed taxes against a son but levied upon property owned by his mother to satisfy the son's tax debts. This exception to Sec. 7421(a) is applicable only where the property levied upon does not belong to the individual against whom the taxes were assessed. Here, in contrast, the tax liability at issue is asserted to be taxpayer's own. She is the individual against whom the tax was assessed, and it is her property which has been levied upon. The validity of the assessment itself presents a different question, which we do not now consider on the merits but only to the extent necessary to determine whether the court below had jurisdiction.

The government's position below was that the property settlement agreement endorsed by the Texas courts did not suffice to shift taxpayer's federal income tax liability to her former husband, and that the IRS was not required thereby to collect the entire tax due from him but was free to assess each individually.

Texas is a community property state. Under its laws, a wife has a vested interest in and is owner of half of the community property. See 13 Vernon's Tex.Ann.Civ.St. art. 4619, Sec. 1, repealed and recodified, Vernon's Tex.Ann. Civ.St. Family Code Sec. 5.02 et seq.; Hopkins v. Bacon, 1930, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; Broday v. United States, 5 Cir. 1972, 455 F.2d 1097; Duncan v. Duncan, Tex.Civ.App.1964, 374 S.W.2d 800. She is liable for the federal income taxes on such a share. United States v. Mitchell, 1971, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406; Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Hopkins v. Bacon, supra. Whether a property settlement agreement ratified by a state court serves to

---

7. Taxpayer also argued that income earned by a husband separated and living apart from his spouse is not taxable to the wife, relying upon Ramos v. C. I. R., 5 Cir. 1970, 429 F.2d 487, where this court held that a wife could not be taxed on income earned by a husband who had deserted her. *Ramos* however, as this court pointed out in Broday v. United States, 5 Cir. 1972, 455 F.2d 1097, was effectively overruled by United States v. Mitchell, 1971, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406. In any event, a "liberal" reading of *Ramos* in the light of *Mitchell* would require dismissal on this ground.

relieve a taxpayer of her federal tax liability in property in which she had a vested interest and alters the rule of liability presents an issue of law which cannot be resolved initially in a suit for injunctive relief. The government's position is not so far-fetched as to call into question its good faith or open it to the challenge that the exaction is " 'in the guise of a tax.' " See United States v. Mitchell, supra, where the Supreme Court held that a state statute allowing renunciation of the community estate after a spouse's interest vested did not serve to relieve the renouncing spouse of her federal income tax liability for the community income.

Under the most liberal view of the facts and law, it was not clear at the time of the hearing on the motion to dismiss that the government could not have ultimately prevailed on the merits, and the district court was in error in failing to dismiss the complaint.

While the district judge realized that the property settlement agreement "apparently" would not relieve taxpayer of her tax liability and acknowledged that the government's position was "strong," he held that the government's settlement with Noe released the entire community estate, relying in great measure on his determination that the government agents who effected a settlement with Noe knew about the divorce decree and the property settlement agreement.[8] In reaching his decision, he relied upon Harrold v. Commissioner, 9 Cir. 1956, 232 F.2d 527, where a divorced husband paid the entire tax liability of the community pursuant to a property settlement agreement and later sued for a refund of an amount representing his former wife's share of the community property tax. The IRS was enjoined from collecting a

protective assessment against the wife because the court determined that the wife had "in effect" paid and it was improper for the IRS to participate in the fraud against the wife by refunding the money. Similarly, the district court below found that a release of the community occurred because Mrs. Lange "in effect" paid her share of the taxes by way of the property settlement agreement and the IRS, aware of the agreement, participated, "certainly thoughtlessly, but, nevertheless, effectively, in the fraud Noe perpetrated against Petitioner."

But in this case the government's full knowledge of the property settlement agreement at the time of settlement with Noe was in dispute. Further, and more importantly, even if the government were aware of such an agreement, it was not clear at the time of suit that the IRS should nevertheless be forced to collect the entire amount from taxpayer's former husband or forego collection of taxes due. See *Mitchell,* supra. Although it may have been able to collect from Noe on a third-party beneficiary theory, depending upon Texas contract law, whether it *must* do so although not a party to the agreement between husband and wife presents a different question. The situation, from the government's point of view, is distinguishable from that in *Harrold* because in *Harrold* the tax had actually been paid. The district judge failed to view the facts and law in a light most favorable to the government, as he was required to do. The situation revealed by the record before us will not support a finding of a lack of good faith sufficient to come within the *Enochs* exception.

Reversed, with directions to dismiss the complaint.

---

8. Information as to the IRS settlement with Noe was not before the district court at the hearing on the motion to dismiss and is arguably not before us on this appeal. See footnote 6 and accompanying text, supra. We consider it, nevertheless, noting that it strengthens taxpayer's argument in support of jurisdiction.