SAM R. AND PAM K. DILLON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dillon v. Commissioner
Docket No. 20824-88
United States Tax Court
T.C. Memo 1991-129; 1991 Tax Ct. Memo LEXIS 148; 61 T.C.M. (CCH) 2218; T.C.M. (RIA) 91129; March 21, 1991, Filed *148 Decision will be entered under Rule 155.
Sam R. and Pam K. Dillon, pro se. Marilyn S. Ames and H. Elizabeth Downs, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Sam and Pam Dillon
Addition to Tax
Year
Income Tax
Sec. 6661
1984
$ 73,815.83
$ 17,386.10
Sam Dillon
Additions to Tax
Year
Income Tax
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1985
$ 4,865.98
$ 243.30
**
The issues for decision are: 1. Whether Forms 1099 issued to petitioners by the Houston Chronicle Publishing Company (the Houston Chronicle) correctly report gross income received by petitioners during taxable years 1984 and 1985. We held that they do not. 2. Whether income received from the Houston Chronicle in 1984 and 1985 was earned by petitioner Sam R. Dillon as an independent contractor, rather than as an employee. *149 We hold that it was. Thus, this income is not wages, and petitioners must report it as Schedule C income subject to self-employment tax. 3. Whether petitioners' Schedule C gross profits for taxable years 1984 and 1985 should be increased by $ 43,007.71 and $ 5,875.61, respectively. We hold that it should. 4. Whether petitioners are entitled to trade or business deductions for 1984 in the amount of $ 55,192. We hold that petitioners are entitled to trade or business deductions in the amount of $ 40,637.24. 5. Whether petitioners are entitled to a farm loss deduction for 1984 in the amount of $ 4,000. We hold that they are not, but that $ 1,078 of this amount is deductible as interest. 6. Whether income earned by petitioners during 1985 is subject to a community property split. We hold that petitioners must each report half of the community property income for 1985. 7. Whether petitioner Sam R. Dillon is entitled to a personal exemption in 1985 on his separate return for his spouse Pam K. Dillon. We hold that he is not. 8. Whether petitioners are liable for an addition to tax for taxable year 1984 under section 6661 for a substantial understatement of income tax. *150 We hold that a Rule 155 computation will be necessary to determine petitioners' deficiency for 1984 and the applicability of the section 6661 addition to tax. 9. Whether petitioner Sam R. Dillon is liable for an addition to tax for taxable year 1985 pursuant to section 6653(a)(1), and (2) due to negligence. We hold that he is. 10. Whether petitioners are liable for damages (now called a penalty) under section 6673. We hold that they are. References to "petitioner" are to Sam R. Dillon. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. 1. Petitioners
Petitioners were married and resided in Texas when the petition was filed. Petitioners filed a joint income tax return for 1984 and separate returns for 1985. 2. Petitioners' Newspaper Distribution Income
During 1984 petitioner was a newspaper distributor for the Houston Chronicle. As a distributor, he took delivery of newspapers and distributed them to home delivery customers and various retail outlets and news racks in several northeast Texas towns. He executed a series *151 of contracts with the Houston Chronicle to distribute newspapers throughout a seven-county area in northeast Texas. The contracts between petitioner and the Houston Chronicle provided that: The Chronicle and Distributor intend hereby that Distributor be an independent contractor. The mode, manner, method and means employed by Distributor in the performance of the terms and conditions of this Delivery Service Contract shall be of Distributor's selection and under the sole control and direction of Distributor. Distributor shall be responsible for all risks incurred in the operation of Distributor's to perform any part of Distributor's obligations hereunder shall be under the sole control and direction of Distributor and Distributor shall be solely responsible for all liabilities and expenses thereof. The Chronicle shall have no right or authority with respect to the selection, control, direction, compensation, of tenure of such persons. * * *
The contracts also provided that the distributor's own vehicles be used for receipt, transportation, and distribution of the newspapers. The distributor was to maintain liability insurance on the vehicles and worker's compensation insurance *152 on the distributor's employees. The distributor also agreed to indemnify the Houston Chronicle against any claims caused directly or indirectly by the distributor or his employees, and to obtain and maintain the necessary permits and licenses for performance of the distributor's obligations under the contract. Petitioner operated the newspaper distributorship in 1984 under a contractual agreement with the Houston Chronicle which was virtually the same as in previous years. Petitions was to be paid a net fee each month plus an additional amount for each daily and Sunday paper actually delivered. The Houston Chronicle also paid a 10 percent collection fee for subscribers who failed to pay by mail. Petitioner was responsible for collection of all monies due to the Houston Chronicle, with the exception of subscriptions paid by mail. The daily routes covered by petitioner's distribution contracts were at least 500 miles long, and there were between 2,000 and 2,500 newspapers to be delivered. Although Pam Dillon did not have a written contract with the Houston Chronicle, she worked as an independent carrier during 1984. She was not paid by the Houston Chronicle but rather collected *153 money from the sale of newspapers. The Houston Chronicle issued a Form 1099 to petitioner for taxable year 1984 showing income of $ 198,994. However, petitioner was not paid that amount. During 1984, petitioner received checks from the Houston Chronicle totaling $ 43,007.71. Pam Dillon was paid $ 18,476.17 for the sale of newspapers during 1984. Petitioners reported this amount as gross receipts from the newspaper distribution business on their Schedule C for 1984. Neither petitioner received any income during 1984 other than from distribution of the Houston Chronicle. During 1984, petitioners also received $ 1,866 from the Houston Chronicle in contributions to a pension plan or annuity. Petitioners' total income from distributing the Houston Chronicle in 1984 was $ 63,349.88, including pension contributions. The Form 1099 issued to petitioner by the Houston Chronicle for taxable year 1985 shows income of $ 14,739. However, petitioner was not paid this amount. In January 1985 petitioner received a check for $ 3,507.73 from the Houston Chronicle for services performed in December 1984. This was petitioner's only payment from the Houston Chronicle in 1985. 3. Other *154 Items
Petitioner also received the following income in 1985: Payor
Amount
Type of Income
Red T. Coil
$   492.38
wage  Bonner Roofing & Metal Inc.
252.00
wage  Bonner Roofing & Metal Inc.
56.00
1099  Troy Chandler
$ 2,314.88
1099  Subtotal
$ 3,115.26
28.00
Interest
Total
$ 3,143.26
Petitioner received total income of $ 6,143.99 in 1985, but did not report any income as self-employment income for that year. Petitioner presented no evidence to show that the income received from Bonner Roofing & Metal and Troy Chandler was earned as an employee. Pam Dillon received wage income in the amount of $ 4,212.41 during 1985. Petitioners each claimed a personal exemption for a spouse on their separate income tax returns for 1985. 4. Farm Loss Deduction
Petitioners claimed a $ 4,000 farm loss deduction consisting of a $ 2,875 carryover loss from 1983 and $ 1,125 paid to the Farmers Home Administration on their 1984 income tax return. Petitioners presented no evidence in support of the carryover farm loss from 1983. Petitioners paid interest to the Farmers Home Administration during 1984 in the amount of $ 1,078. They presented no evidence, *155 however, that the interest was paid in connection with an allowable farming operation. 5. Car and Truck Expenses
For taxable year 1984, petitioners claimed a Schedule C deduction for car and truck expenses in the amount of $ 36,500. This amount is based on a mileage rate of 20 cents per mile, 5000 miles per day for 365 days. The mileage was computed for both petitioner's and Pam Dillon's distribution routes. Petitioners used two vehicles in 1984 to distribute the Houston Chronicle. Petitioners kept no logs of mileage driven for business purposes during 1984. During 1983 it took both petitioners to cover the routes under petitioner's distribution contracts with the Houston Chronicle. The only difference between 1983 and 1984 was that the routes got bigger and there were more newspapers to deliver. There is no evidence as to the mileage of Pam Dillon's route, whether she used the same vehicle on her independent carrier route as for distribution on petitioner's routes, or the number of days she worked as an independent carrier in 1984. For the taxable year 1984, petitioners claimed a deduction on Schedule C for travel and entertainment expenses in the amount of $ 2,070.99. *156 Petitioners presented no evidence to establish that they incurred business related travel and entertainment expenses in 1984. Respondent conceded that petitioners are entitled to Schedule C deductions in 1984 as follows: Supplies
$   754.34
Refunds
11.75
Box rental
20.00
Ads
119.93
Contract Labor
12,742.34
Gifts
140.00
Automobile expenses
26,209.60
Telephone
500.00
Warehouse upkeep
58.00
Bank charges
81.28
Total Deductions
$ 40,637.24
OPINION 1. Petitioners' Payments for the Houston Chronicle Publishing Company Respondent concedes that the Forms 1099 issued by the Houston Chronicle do not correctly reflect petitioner's gross profit from his newspaper distributorship in 1984 and 1985. Respondent determined and we find that petitioner was paid $ 43,007.71 in 1984 and $ 3,507.73 in 1985 for distributing the Houston Chronicle. Pam Dillon also collected $ 18,476.17 from the sale of the Houston Chronicle in 1984. Petitioners also received W-2P pension income in 1984 in the amount of $ 1,866. Accordingly, petitioners *157 had total income of $ 63,349.88 from the Houston Chronicle in 1984, and $ 3,507.73 in 1985. 2. Petitioner's Status as an Independent Contractor
Section 1401 imposes a tax on an individual's self-employment income. The self-employment tax is imposed on net earnings of $ 400 or more derived by an individual from a trade or business carried on by him. Sec. 1402(a) and (b). Income derived by an individual as an employee of a trade or business is not subject to the self-employment tax. Sec. 1402(a) and (c). Respondent determined that the income received from distribution of the Houston Chronicle is income received as an independent contractors from a trade or business. Petitioner contends that he was an employee of the Houston Chronicle. This Court previously held, in Dillon v. Commissioner, T.C. Memo 1989-14, affd. in part and revd. in part 902 F.2d 406 (5th Cir. 1990), that petitioner worked for the Houston Chronicle as an independent contractor during taxable years 1982 and 1983. The facts regarding the manner in which petitioner operated his newspaper distributorship in 1984 are identical to those decided for the previous years. *158 The term "employee" for purposes of the Federal Insurance Contributions Act means "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Sec. 3121(d)(2). Whether an employer-employee relationship exists is a question of fact. Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Simpson v. Commissioner, 64 T.C. 974, 984-85 (1975). The courts have used the following factors in deciding this issue: (1) The degree of control exercised by the principal over the details of the work, (2) which party invests in the facilities used in the work, (3) the opportunity of the individual for profit or loss, (4) rights of the principal regarding discharge of the individual, (5) the nature of the work in relation to the principal's regular business, (6) the permanency of the relationship, and (7) the belief of the parties regarding the nature of their relationship. Simpson v. Comissioner, supra.
Petitioner's distribution contract with the Houston Chronicle clearly indicates that petitioner was an independent contractor and that an *159 employer-employee relationship was not intended to be created. Petitioner had sole control over the manner in which he operated his business. Petitioner had discretion to determine his routes and hours of work. He could hire substitutes to assist him with no requirement that they be approved by the Houston Chronicle. Petitioner was not required to obtain approval from the Houston Chronicle to take a day off; he needed only to make arrangements to get the paper distributed. Petitioner acquired and maintained his own vehicles and was responsible for all necessary licenses and insurance. Upon consideration of all the facts and circumstances, we conclude that petitioner operated his newspaper distributorship in 1984 as an independent contractor. Accordingly, petitioner's income from the newspaper distribution business, after allowable deductions, is subject to self-employment tax. 3. Schedule C Income for Petitioners for 1984 and for Petitioner for 1985 Petitioners reported wage income of $ 46,635.44 on their joint return for 1984. This represented the checks issued to petitioner by the Houston Chronicle during 1984. There is no evidence in the record that petitioners had *160 any wage income in 1984. The checks received by petitioner from the Houston Chronicle were income earned by him as an independent contractor. Accordingly, these checks are self-employment income from petitioner's newspaper distribution business, and should be included in Schedule C income for 1984. Petitioners' total income from distributing the Houston Chronicle in 1984 was $ 63,349.92, including pension contributions. Of this amount, $ 61,483.88 was self-employment income. Petitioners reported $ 18,476.17 as gross profits on their Schedule C for 1984. Accordingly, petitioners' Schedule C gross profits is increased by $ 43,007.71 for 1984. Similarly, the $ 3,507.73 amount petitioner received in 1985 from the Houston Chronicle was self-employment income for that year. Of petitioner's total income in 1985 ($ 6,650.99), $ 5,878.61 was income subject to self-employment tax. Petitioners' Schedule C gross profits is increased by $ 5,878.61 for 1985. 4. Automobile and Trade or Business Expenses
Petitioners deducted automobile mileage expenses of 20 cents per mile, 500 miles per day, 365 days per year. Petitioners used the standard mileage allowance provided in Rev. Proc. 82-61, [1]1982-2 C.B. 849. *161 Respondent contends that petitioners are not eligible for the standard mileage allowance because they used two cars and, under Rev. Proc. 82-61, the standard mileage allowance does not apply to two or more vehicles used simultaneously, such as in fleet operations. Accordingly, respondent argues that petitioners' care and truck expense deduction must be calculated from actual expenses. Respondent conceded actual car and truck expenses based on substantiation provided by petitioners in the amount of $ 316.40. In addition, respondent conceded gasoline expenses of $ 25,893.20. Thus, respondent conceded that petitioners are entitled to deduct total car and truck expenses in 1984 in the amount of $ 26,209.60. In West v. Commissioner, 63 T.C. 252, 254-255 (1974), we held that the taxpayer's use of two delivery trucks in a newspaper delivery *162 business was sufficiently integrated to constitute a single operation for purposes of Rev. Proc. 70-25, [2]1970-2 C.B. 506, and limited the taxpayer's deduction to his substantiated expenses. The facts in West v. Commissioner, supra, are indistinguishable from those in the instant case. Accordingly, petitioners may not use the standard mileage allowance and are limited to their actual expenses. Petitioners have not submitted any evidence that persuades us that their actual expenses exceeded the $ 26,209.60 amount conceded by respondent. Respondend conceded expense in the amount of $ 14,427.64 for supplies, refunds, box rental, advertisement, gifts, telephone, bank charges, warehouse upkeep, and contract labor. Petitioners have not established that they are entitled to deductions in excess of respondent's allowances. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933); *163 Rule 142(a). Accordingly, petitioners are entitled to trade or business deductions totaling $ 40,637.24 for 1984. 5. Farm Losses
Petitioners claimed a farm loss of $ 4,000 for taxable year 1984, consisting of a $ 2,875 carryover loss from 1983 and interest paid to the Farmers Home Administration in the amount of $ 1,125. Petitioners did not produce any evidence regarding the carryover loss, and have therefore failed to carry their burden of proof on this issue. Welch v. Helvering, supra; Rule 142(a). Respondent, however, concedes an additional Schedule A deduction in the amount of $ 1,078 for the interest paid to the Farmers Home Administration during 1984. 6. Community Property Income
The ownership of income is determined under state law. United States v. Mitchell, 403 U.S. 190, 197, 29 L. Ed. 2d 406, 91 S. Ct. 1763 (1971); see Commissioner v. Estate of Bosch, 387 U.S. 456, 462, 18 L. Ed. 2d 886, 87 S. Ct. 1776 (1967). Texas is a community property state. Under Texas law, community property is "the property, other than separate property, acquired by either spouse during marriage." Tex. Fam. Code Ann. sec. 5.01 (Vernon 1975). Each spouse has a vested interest *164 in and is owner of one-half of the community property. United States v. Mitchell, supra; Hopkins v. Bacon, 282 U.S. 122, 126, 75 L. Ed. 249, 51 S. Ct. 62 (1930); Poe v. Seaborn, 282 U.S. 101, 110, 75 L. Ed. 239, 51 S. Ct. 58 (1930); Lange v. Phinney, 507 F.2d 1000, 1005 (5th Cir. 1975). Thus, when separate returns are filed, each spouse is liable for the Federal income tax liability attributable to his share of the community property. United States v. Mitchell, supra; Hopkins v. Bacon, supra; Poe v. Seaborn, supra; Lange v. Phinney, supra.
Accordingly, petitioner's income for 1985 is subject to a community property split. The total community income in 1985 was $ 10,883.40, and petitioners must each report half. 7. Personal Exemptions
On their separate returns for 1985, petitioners each claimed personal exemptions for themselves and a spouse. Section 151(a) allows each individual a personal exemption in computing their taxable income. Section 151(b) provides that a taxpayer may claim an additional exemption for his spouse if a joint return is not *165 made for the taxable year, and if the spouse has no gross income and is not the dependent of another. For 1985, Pam Dillon had gross income and filed a separate tax return on which she claimed herself as a dependent. Accordingly, petitioner is not entitled to claim an exemption for his wife for 1985. Springmann v. Commissioner, T.C. Memo 1987-474; Rogers v. Commissioner, T.C. Memo 1987-287. 8. Substantial Understatement of Income Tax
Respondent determined that the addition to tax for substantial understatement of income tax pursuant to section 6661 applies for 1984. A substantial understatement is any understatement of income tax for any taxable year which exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b). The notice of deficiency determined a $ 473,815.83 deficiency for 1984. However, because concessions by respondent have reduced this amount, Rule 155 computations will be necessary to determine the correct deficiency amount for 1984. Accordingly, the applicability of the section 6661 addition to tax rests on the final determination of the deficiency amount. 9. Negligence
*166 Negligence is a lack of due care or failure to do what a reasonable, prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of a taxpayer's negligence or intentional disregard of rules and regulations is prima facie correct, and the taxpayer bears the burden of proving that he acted reasonably, prudently, and with due care in preparing and filing his Federal income tax returns. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); McAlister v. Commissioner, T.C. Memo 1989-177, affd. without published opinion 923 F.2d 862 (9th Cir. 1991). Petitioners produced no evidence at trial or in their brief to support the deductions for travel and entertainment expenses, the farm loss, and miscellaneous expenses. In addition, petitioners failed to maintain records for the cars used in the newspaper distribution business during 1984. Section 6001 imposes on all taxpayers the obligation to maintain accurate books and records to enable substantiation of income and deductions. Petitioner also erroneously reported income received by him from the Houston *167 Chronicle as wages rather than as self-employment income in 1984. He also failed to report income received from the Houston Chronicle and interest of $ 28 in 1985. We find that petitioners are liable for the additions to tax for negligence in 1984 and 1985. 10. Damages under Section 6673
At the trial in this case, respondent made a motion for sanctions under Rule 123(a) or, in the alternative, for damages under section 6673. For positions taken prior to January 1, 1990, section 6673 provided that this Court may award damages not in excess of $ 5,000 when proceedings have been instituted or maintained primarily for delay, where the taxpayer's position is frivolous or groundless, or where the taxpayer unreasonably fails to pursue available administrative remedies. We find that petitioners maintained these proceedings primarily for purposes of delay. Petitioner's position on the independent contractor issue was frivolous and groundless and has been previously resolved. Further, this Court has previously considered and rejected the identical issue, so petitioner was clearly aware that his position on this issue was without merit. Accordingly, respondent's motion for damages *168 is granted and we award damages in the amount of $ 500 to the United States pursuant to section 6673. Decision will be entered under Rule 155. Footnotes
**. 50 percent of the interest due on $ 4,865.98.↩
1. Rev. Proc. 82-61 has been superseded by Rev. Proc. 89-66, 1989-2 C.B. 792↩.
2. Rev. Proc. 70-25 was superseded by Rev. Proc. 82-61↩.